DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated appeal comes to us from a decision issued by the Lucas County Court of Common Pleas, Domestic Relations Division, which modified the amount of child support appellant was ordered to pay. Because we conclude that the trial court properly determined some but erred in other calculations used for computing appellant's total child support obligation, we affirm in part and reverse in part.
 {¶ 2} Appellant, Gary C. Thomas, and appellee, Camille Thomas, were divorced in 1996. As part of the final divorce decree, appellant was ordered to pay child support in the amount of $904.99 (including poundage) for the couple's three minor children. In July 2002, pursuant to an administrative review by the Lucas County Child Support Enforcement Agency ("agency"), appellant was ordered to pay $878 per month in child support for the three children. Appellant appealed that ruling to the domestic relations court, and in September 2002, a magistrate conducted a review and mistake of fact hearing.
 {¶ 3} At the hearing, appellee's counsel advised the magistrate that pending contempt issues regarding money owed by appellant had been resolved and that she was there mainly to establish appellee's claim for attorney fees. Appellant appeared without counsel and testified that previously his child support had been calculated on his income from his UPS job which included overtime of approximately 15 hours per week. Appellant had worked in that position for four years. In May 2002, he voluntarily switched to a position at UPS in which he now only averages one hour per week of overtime. Appellant indicated that he had made the change due to health reasons. The court received copies of his pay stubs showing his current income and deductions, including union dues of $35 per month.
 {¶ 4} In October 2002, the couple's oldest son became emancipated and appellant's child support was reduced to $603.33 per month. On December 12, 2002, the magistrate issued her recommendations and calculated appellant's obligation for the two remaining children to increase to $943.34 per month. The trial court reviewed and adopted the magistrate's decision that same day. On December 23, 2003 appellant filed his objections to the magistrate's decision; on January 29 and 30, 2003, he filed the transcript of the magistrate's hearing. On September 3, 2003, the trial court overruled appellant's objections.
 {¶ 5} Appellant now appeals from that judgment, setting forth the following three assignments of error:
 {¶ 6} "I. The trial court abused its discretion when it failed to consider a downwards deviation in appellant's child support obligation to the appellee.
 {¶ 7} "II. The trial court abused its discretion when it included rental income when computing appellant's child support obligation to appellee.
 {¶ 8} "III. The magistrate abused her discretion when she adopted certain finding[s] of the administrative officer and ignored others."
 {¶ 9} We will address appellant's assignments of error together. Appellant essentially argues that, in determining his gross income, the trial court erred in adopting the magistrate's determinations and calculations as to his rental income, overtime pay, and deductions for union dues and parochial school tuition.
 {¶ 10} Before we proceed to the merits, a discussion of the procedural framework for an administrative review of child support is warranted. Child support orders may be modified pursuant to a request of one of the parties or as a result of the agency's independent review as now required by R.C. 3119.024. After a child support agency administratively reviews a current child support order, it sets forth findings of fact and recommendations based upon any new information provided by the parties, as well as the previous file information upon which the prior order was based. The parties may appeal the agency's decision to the common pleas court, either the domestic relations or juvenile divisions, depending upon which court issued the original support order. See R.C. 3119.63 and 3119.64. To conduct its review, the court schedules what is commonly referred to as a "mistake of fact" hearing. The court may request or permit additional evidence to be presented by the parties at this hearing. See R.C. 3119.68. When reviewing the decision and child support work sheet prepared by the agency, the agency's factual findings may be accepted by the court, especially where no additional evidence is presented to contradict such findings.
 {¶ 11} If a magistrate conducts the hearing and issues a decision, any objections must be filed within 14 days of the filing of the decision pursuant to Civ.R. 53(E)(3). In support of his or her objections, the party must also file a transcript of the hearing or an affidavit of the evidence if a transcript is not available. Civ.R. 53(E)(3). After conducting an independent review of the evidence, the trial court may then adopt, reject, modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. Civ.R. 53(E)(4)(b). The court may consider additional evidence regarding the objections if the party offering such evidence demonstrates that the evidence could not, with reasonable diligence, be produced for the magistrate's consideration. Id.
 {¶ 12} In making its ultimate decision in child support matters, the trial court possesses considerable discretion. The decision of the trial court will be reversed only if it is an abuse of that discretion. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390. An "abuse of discretion" connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1993), 5 Ohio St.3d 217, 219.
 {¶ 13} Nevertheless, challenges to factual determinations upon which the child support order is based are reviewed using the "some competent, credible evidence" standard. See Masitto v.Masitto (1986), 22 Ohio St.3d 63, 66 (citing C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279 to apply the "some competent credible evidence" standard to a factual determination by the trial court). See, also, Jajola v. Jajola, 8th Dist. No. 83141, 2004-Ohio-370, at ¶ 8; Hissa v. Hissa, 8th Dist. Nos. 79994 79996, 2002-Ohio-6313; Spinetti v. Spinetti (Mar. 14, 2001), Summit App. No. 20113; Bender v. Bender (July 18, 2001), Summit App. No. 20157; Fallang v. Fallang (1996),109 Ohio App.3d 543, 548. R.C. 3119.02 governs the calculation of a party's child support obligation. It provides that the amount of child support shall be calculated "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." Since a determination of gross income for support purposes is a factual finding, we must review the trial court's decision to see whether its calculations regarding rental income, overtime pay, and union dues are supported by some competent, credible evidence. See Fallang, supra.
 {¶ 14} In light of the outlined appeal procedures and the standard of review, we will first address the trial court's calculation as to appellant's rental income. R.C.3119.01(C)[1] includes the following definitions, in pertinent part, to be used when calculating child support:
 {¶ 15} "(7) `Gross income' means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; * * *rents; * * * spousal support actually received; and all other sources of income. `Gross income' includes * * * self-generated income; and potential cash flow from any source. * * *" (Emphasis added.)
 {¶ 16} When a trial court determines a parent's income for purposes of calculating child support, it must verify the income "with suitable documents, including, but not limited to, pay stubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05. Income for child support purposes is not always equivalent to the parent's taxable income. Foster v. Foster (2002),150 Ohio App.3d 298, 301, 2002-Ohio-6390, at ¶ 12. Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not the sole factor for the trial court to consider. Id.; Houts v. Houts (1995),99 Ohio App.3d 701, 706. Certain expenses in the production of income may not be deductible from gross income. See R.C.3119.01(C)(9) and (13). The party seeking a modification of his or her child support obligation has the burden of proof to show that the modification of child support requested is appropriate. See Zimmer v. Zimmer (Feb. 27, 2001), Franklin App. No. 00AP-383.
 {¶ 17} In this case, appellant testified that he had a loss from his rental income due to a fire which had caused approximately $10,000 in damage. He did not, however, document this loss or expense by anything other than his own testimony. The agency initially determined appellant's rental income to be $7,838 ($27,120 income reduced by $19, 282 in allowable expenses). This amount was calculated using figures from appellant's 1998 tax return, the only return available to the agency and the court. Since appellant did not meet his burden to fully document his current rental income or expenses, the magistrate and the trial court properly accepted the rental income amount as calculated by the agency.
 {¶ 18} We will next address whether the trial court's decision correctly calculated the amount of appellant's overtime pay or properly excluded a deduction for union dues. R.C. 3119.01
(C)(5) defines "income" for purposes of calculating child support as "either of the following: (a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." When calculating child support, "amounts paid for mandatory deductions from wages such as union dues" or "nonrecurring or unsustainable income or cash flow items" are not to be included in gross income. R.C. 3119.01(C)(7)(d) and (e). "`Nonrecurring or unsustainable income or cash flow item' means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8).
 {¶ 19} In this case, appellant remained fully employed but simply switched to a job which required that he work 40 to 42 hours instead of 55 to 58 hours per week. Neither the agency nor the trial court made a finding that appellant was underemployed. During the time that appellant was working the 15 to 18 hours of weekly overtime, including the first five months of 2002, his child support total was correctly based upon that higher amount. The record shows, however, that appellant does not expect to receive more than an hour per week of overtime. Based upon the lower overtime requirements of his new position, the agency determined appellant's overtime pay to be $2,096 per year.
 {¶ 20} The magistrate and trial court's calculation, however, was improperly based on nonrecurring overtime which is no longer available, i.e., the overtime income from appellant's old job during the first five months of 2002. This results in a figure that simply does not accurately represent appellant's current income. Therefore, the trial court must determine appellant's current child support obligation based upon the overtime he now expects to receive, rather than an average of the past year's overtime.[2]
 {¶ 21} Likewise, the agency's initial deduction of $420 per year for union dues is supported by the information provided by appellant's pay stubs which were submitted to the magistrate as a plaintiff's exhibit. Moreover, even if no further evidence was submitted at the mistake of fact hearing, the magistrate had no basis for rejecting the agency's finding as to the amount of union dues. Therefore, although specifically authorized, this amount was improperly omitted from the child support worksheet. Consequently, the trial court erred in accepting the magistrate's omission of the union dues, and the $420 deduction must be added back. Therefore, the trial court erred since its determinations as to appellant's overtime pay and the union dues deductions were not supported by some competent, credible evidence.
 {¶ 22} Finally, we will examine appellant's claim that he should have received a credit for his payment of 50 percent of his children's parochial school tuition. R.C. 3119.02 provides that whenever a court is calculating the amount of a child support obligation, it must calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of R.C. 3119.02 to 3119.24. In making a downward deviation from the basic child-support guidelines, a trial court must find that the amount of child support indicated in the worksheet would be unjust or inappropriate and not in the best interests of the children. R.C. 3119.22. The factors that the court is to consider in making a deviation from the worksheet are set forth in R.C. 3119.23. Among those factors are not only direct payments for schooling, but also disparity in income between parties or households, and the "standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married[.]" R.C. 3119.23(G), (J), and (L). The trial court is granted wide discretion in its decision on whether to deviate from the statutory support schedule and child support worksheet calculations. See Booth v. Booth (1989), 44 Ohio St.3d 142,144; Laliberte v. Laliberte (July 12, 1995), Medina App. No. 2366-M.
 {¶ 23} In this case, as appellant correctly notes, the parties' divorce decree states that the parties "shall each pay fifty (50%) percent of the cost of parochial school tuition for the parties[`] minor children, through high school, unless both parties otherwise agree. At any time in the future when this Court modifies child support in this case this court must consider the payments made by the parties for parochial school tuition as a factor what would support a downwards deviation from the amount stated in the Ohio Child Support Guidelines." Thus, the original decree provides that tuition payments be factored into any future modifications.
 {¶ 24} In its judgment entry, when considering any tuition credit to appellant, the trial court noted that appellee had previously filed motions to show cause when appellant failed to pay his share of the parochial school tuition. At trial, however, appellee's counsel informed the court that appellant had paid the tuition and that the issue had been resolved. Therefore, in our view, appellant's previous nonpayment of the tuition should not have factored into the trial court's decision. Since this improperly influenced the trial court's decision regarding a downward deviation for appellant's tuition payments as provided for in the terms of the divorce decree, we must remand for the court's reconsideration pursuant to those terms.
 {¶ 25} Accordingly, appellant's second assignment of error is not well-taken. Appellant's first and third assignments of error are well-taken as to the reconsideration of a credit for tuition payments, the calculation of overtime pay, and the union dues deduction.
 {¶ 26} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division is affirmed in part and reversed in part. This case is remanded to the trial court for proceedings consistent with the determinations in this decision. Court costs of this appeal are divided equally between appellant and appellee.
Judgment Affirmed in part and Reversed in part.
Pietrykowski and Lanzinger, JJ., concur.
[1] We must review the trial court's decision by application of the law which existed at the time of the trial court proceedings which were begun in 2002. Former R.C. 3113.215, which defined "gross income" and other pertinent matters in the calculation of child support, was repealed effective March 22, 2001. See Am.Sub.S.B. No. 180. Thus, the provisions of R.C. 3113.215 have been replaced by new R.C. 3119.01, et seq.
[2] We are aware that 3119.05(D) provides the following formula for the calculation of overtime or bonuses: "the lesser of the following as income from overtime and bonuses: (1) the yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed; (2) the total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed." This formula applies only to regular or expected overtime, and, thus, is not applicable where a obligor no longer expects to receive such income.