DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Huron County Court of Common Pleas, Juvenile Division, which determined the amount of child support to be paid by appellant. Because we conclude that the trial court did not err in its modification and adoption of the magistrate's decision, we affirm.
 {¶ 2} Appellant/cross-appellee, Scott. G.F. ("father" or "appellant"), and appellee/cross-appellant, Nancy W.S. ("mother" or "appellee"), are the parents of a son born in May 2000. The parties were never married, but in September 2000, as the result of a parentage action, father was ordered to pay child support in the amount of $644.12 per month. In June 2002, father filed a complaint in the juvenile court seeking to enforce visitation. Mother answered and counterclaimed, seeking an increase in child support and payment of health insurance and past and future medical expenses.
 {¶ 3} A magistrate conducted a trial in 2003, consisting of four hearing dates: July 29, August 25, September 9, and September 11. Father presented documents and testimony regarding his gross income from the following sources: including selfemployment income from his own business, Fisher Communications; wage income from his parents' business, Mayfair Management, Inc. ("Mayfair"); rental income from Wagner Realty, Co., a rental property business he "purchased" from his siblings and parents; and interest and dividend income from various stocks and investment funds. Father had also paid federal income taxes on K-1 stock interest in Mayfair, an "S" Corporation, but stated that he received no cash distributions from Mayfair. Father essentially claimed that his child support obligation should be decreased due the decrease in gross income for the most recent year, 2002.
 {¶ 4} Mother, a hair stylist, worked in various locations. The magistrate imputed additional income to her due to acknowledged unreported tip income of $10,000 in 2001. Mother claimed that father's loss of income was due to his playing golf instead of putting in work time at his business. Mother also claimed that father's deductions from his business profits included gifts for family members and other items which should not be permitted for purposes of child support determination.
 {¶ 5} The magistrate issued findings of fact and conclusions of law, excluding certain business deductions claimed by appellant on his taxes, and determining appellant's gross income for the purposes of child support by income averaging. The magistrate noted that although father claimed that his business income from Fisher Communications had decreased significantly in 2002, father had expended unusually large amounts for "business deductions." The magistrate specifically noted that during the most recent year when profits allegedly went down, father continued to spend excessive amounts for country club bills and the new vehicle lease, purportedly for his business, required a $2,400 down payment and $917 in monthly payments. The magistrate specifically found no evidence, however, that father was intentionally working fewer hours or refusing to work. Based upon the evidence presented, the magistrate averaged father's gross income for 2000, 2001, and 2002. Based upon father's adjusted gross income of $58,755.90 and mother's adjusted gross income of $28,608.90, the magistrate recommended that father's child support obligation be increased to $759.62 plus processing fees of $15.19 per month.
 {¶ 6} Both parties filed objections to the magistrate's decision. The trial court determined that the magistrate had erroneously included father's self-employment income on line one of the child support worksheet, which was for other wages earned. The court overruled objections to the exclusion of "purported business expenses" and found that such findings were supported by the record. The trial court also found that the magistrate improperly included an adjustment for mother's other child from her previous marriage. Since, as a result of the death of that child's father, mother receives Social Security benefits in excess of the worksheet dependency exemption, the court concluded that she should not have received the downward adjustment to her income for the other child. Without detailed discussion, the trial court then overruled all of the remaining objections by both parties. Based upon the court's changes, father's income was adjusted to $55, 746.11 and mother's to $31, 658.90. Father's child support obligation was recalculated to be $720.61 plus processing fees of $14.41 per month.
 {¶ 7} Father now appeals from that judgment, setting forth the following six assignments of error:
 {¶ 8} "Assignment of Error No. 1
 {¶ 9} "The court erred in averaging all sources of income of plaintiff-appellant over three years to arrive at gross income on the child support worksheet upon which the support order was based.
 {¶ 10} "Assignment of Error No. 2
 {¶ 11} "The court abused its discretion in averaging gross income from employment over three years, where the facts of this case show it is not appropriate.
 {¶ 12} "Assignment of Error No. 3
 {¶ 13} "The court erred in using the three year average income instead of the lesser amount of the most current full year 2002 income.
 {¶ 14} "Assignment of Error No. 4
 {¶ 15} "The trial court erred in failing to allow any self-employment business expenses as deductions from self employment income.
 {¶ 16} "Assignment of Error No. 5
 {¶ 17} "The court erred in including as income retained earnings from a minority interest in an "S" corporation that were not distributed to plaintiff, a violation of the law.
 {¶ 18} "Assignment of Error No. 6
 {¶ 19} "The judgment entry erroneously failed to provide plaintiff/appellant with a deduction for the cost of health insurance for the parties' minor child."
 {¶ 20} In her cross-appeal, Nancy argues the following five assignments of error:
 {¶ 21} "Assignment of Error No. 1
 {¶ 22} "The trial court erred in not making an express finding that plaintiff/cross-appellee was not reporting all his gross income for the year 2002, determining the amount of that income, and factoring that income into the child support worksheet.
 {¶ 23} "Assignment of Error No. 2
 {¶ 24} "The trial court erred in not making an express finding that plaintiff/crossappellee was voluntarily underemployed in the year 2002, and imputing income to him on that basis.
 {¶ 25} "Assignment of Error No. 3
 {¶ 26} "The trial court erred in not including non-monetary benefits provided [to] plaintiff/cross-appellee by his parents, such as free housing and free health insurance, in plaintiff/cross-appellee's income.
 {¶ 27} "Assignment of Error No. 4
 {¶ 28} "The trial court erred in assigning defendant/cross-appellant $10,000 additional income for the years 2000 and 2002.
 {¶ 29} "Assignment of Error No. 5
 {¶ 30} "The magistrate erred in not allowing evidence proffered [which were] exhibits summarizing plaintiff/cross-appellee's income and expenses, including proposed defendant/cross-appellant's exhibits M-1, M-2, M-3, M-4, and M-5."
 I. {¶ 31} We will first address father's fourth, fifth, and sixth assignments of error, which all essentially challenge factual findings regarding income attributable to him, including deductible expenses permitted and other allowable deductions.
 {¶ 32} When disposing of objections, the trial court "may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter" pursuant to Civ.R. 53(E)(4)(b). Civ.R. 53(E)(3)(b) provides that "any objection to a finding of fact [by a magistrate] shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." In cases where the objecting party fails to provide a transcript or affidavit, however, the trial court "`is limited to an examination of the [magistrate's] conclusions of law and recommendations, in light of the accompanying findings of fact only unless the trial court elects to hold further hearings.'"Weitzel v. Way, 9th Dist. No. 21539, 2003-Ohio-6822, at ¶ 18, quoting Wade v. Wade (1996), 113 Ohio App.3d 414, 418.
 {¶ 33} Upon appellate review, where the objecting party failed to provide a transcript or affidavit to the trial court in support of his objection, this court is limited to determining whether the trial court abused its discretion in modifying or adopting the magistrate's decision. State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 730; Helmkev. Helmke, 6th Dist. No. OT-04-029, 2005-Ohio-1388. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. See Berk v. Matthews (1990), 53 Ohio St.3d 161, 169. Consequently, "[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm." Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
 {¶ 34} In this case, although both parties filed objections to the magistrate's decision, neither party ordered a full transcript of all four hearing days of the trial which began in July and ended in September 2003. Therefore, we must examine the issues presented while mindful that, like the trial court, we do not have a complete transcript of the evidence and testimony presented to the magistrate.
 {¶ 35} In his fourth assignment of error, father claims that the trial court erred in disallowing any self-employment business expenses. We first note that gross income for child support purposes is not always equivalent to the parent's taxable income.Thomas v. Thomas, 6th Dist. No. L-03-1267, 2004-Ohio-1034, at ¶ 16; Foster v. Foster (2002), 150 Ohio App.3d 298, 301,2002-Ohio-6390, at ¶ 12. Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not the sole factor for the trial court to consider.Thomas, supra; Foster, supra; Houts v. Houts (1995),99 Ohio App.3d 701, 706. Certain expenses in the production of income may not be deductible from gross income. See R.C.3119.01(C)(9) and (13). The party seeking a modification of his or her child support obligation has the burden of proof to show that the modification of child support requested is appropriate. See Zimmer v. Zimmer (Feb. 27, 2001), 10th Dist. No. 00AP-383;Rohrback v. Rohrback (1988), 40 Ohio App.3d 92, 93.
 {¶ 36} In this case, father's expenses allowed as deductions by the IRS for tax purposes are not necessarily the same as those permitted in determining gross income for child support purposes. Although father may have submitted his tax returns and other voluminous documents, the ultimate determination depended on father's credibility as to his deductions and how they related to his business. Since the trial court did not have a complete transcript of all four trial days, it was bound to accept any factual determinations made by the magistrate. Likewise, since we may not look at any testimony beyond that record, we must defer to the trial court's adoption of those factual determinations. Therefore, the trial court did not err in adopting the magistrate's exclusion of certain business expense deductions to father's gross income.
 {¶ 37} Father argues in his fifth assignment of error that the court also erred in including retained earnings which were not distributed to him from his interest in his parents' "S" corporation. The definition of "income" for purposes of the child support guidelines has been deemed sufficiently broad to include retained corporate earnings. Williams v. Williams (1991),74 Ohio App.3d 838, 843.[1] The dispositive issue is not that appellant's "S" corporation retained earnings were not paid out to him; rather, it is whether the corporate entity was used as a device to shelter the income from the child support calculation and the degree of control that the obligor exercises over the decision to distribute those earnings. Id. Where the evidence indicates that a child support obligor may be using the corporation as a "subterfuge" to avoid paying child support, the retained earnings may be included in gross income even though not distributed. Id. See, also, Willman v. Cole (June 11, 2001), 4th Dist. Nos. 00CA702, 00CA707; Murray v. Murray (1999),128 Ohio App.3d 662, 668; Emary v. Emary, (Oct. 23, 1996), 9th Dist. No. 96CA6353, overruled on other grounds. "Although it may be inequitable to base child support on some retained business earnings which provide no disposable income to the parent, it is equally inequitable to permit a parent to reduce his personal income and resulting support obligation by leaving income in a privately held business." Emary, supra.
 {¶ 38} In this case, father claims that the retained earnings should have been excluded from his income since they were not distributed to him. This fact, however, is not dispositive of whether the earnings are includable in gross income for child support purposes. Based upon the facts in the magistrate's decision, a reasonable inference may be made that since the other shareholders were his parents and siblings, father's retained earnings remained accessible and could be distributed easily should he have need of the funds. In addition, father was permitted to include a deduction for income tax purposes when his Mayfair "S" corporation earnings showed a loss, thus taking advantage of the reduction to his income. Without a complete transcript, the trial court, again, properly accepted the magistrate's finding, and we must defer to findings of fact which were directly related to the credibility of the witnesses. Thus, we decline to disturb the trial court's decision to overrule any objections to the inclusion of the retained "S" corporation earnings in father's income.
 {¶ 39} In father's sixth assignment of error, he asserts that the trial court should have allowed a deduction from his income for the cost of health insurance for the minor child. Although there may have been some testimony about the potential cost for such insurance, it is undisputed that father had not been paying for his own or any other health insurance through his parents' company. Without a complete transcript, we may not speculate that sufficient evidence of such cost was established by father. Again we must presume the regularity of the trial court's acceptance of the magistrate's factual findings.
 {¶ 40} Accordingly, father's fourth, fifth, and sixth assignments of error are not well-taken.
 II. {¶ 41} In father's first, second, and third assignments of error, he argues that the trial court erred in applying the income averaging method to his sources of income over the three most current years to determine his yearly income for the purpose of calculating child support. He argues that the court should have used only his income from 2002, the most current year, because his self-employment income and wages from Mayfair had declined. Father argues that income averaging should be used only for bonuses or overtime and is inappropriately applied to self-employment income. We disagree.
 {¶ 42} In making its ultimate decision in child support matters, the trial court possesses considerable discretion. The decision of the trial court will be reversed only if it is an abuse of that discretion. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390, 1997 Ohio 105. An "abuse of discretion" connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1993),5 Ohio St.3d 217, 219.
 {¶ 43} The determination of gross income is a factual finding, which is normally reviewed using the "some competent, credible evidence" standard. Thomas v. Thomas, 6th Dist. No. L03-1267, 2004-Ohio-1034; Jajola v. Jajola, 8th Dist. No. 83131, 2004-Ohio-370, ¶ 8. As noted previously, however, because of the incomplete transcripts, we are limited in our review of the factual findings to determining only whether the trial court's method of calculation was appropriate.
 {¶ 44} R.C. 3119.02 governs the calculation of a party's child support obligation. It provides that the amount of child support shall be calculated "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." When a trial court determines a parent's income for purposes of calculating child support, it must verify the income "with suitable documents, including, but not limited to, pay stubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05.
 {¶ 45} R.C. 3119.01 (C)(5) defines "income" for purposes of calculating child support as "either of the following: (a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." "Gross income" is defined by R.C. 3119.01(C)(7) as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; * * * and all other sources of income. `Gross income' includes * * * self-generated income; and potential cash flow from any source."Foster, supra. "`Nonrecurring or unsustainable income or cash flow item' means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8).
 {¶ 46} R.C. 3119.05 (H) states that, "[w]hen the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years." Where income drops sharply and is not expected to rise again, income averaging is inappropriate. See Thomas, 6th Dist. No. L-03-1267, 2004-Ohio-1034. It is particularly appropriate, however, to average an obligor's income where the income is unpredictable or inconsistent. Marquard v. Marquard (Aug. 9, 2001), 10th Dist. No. 00AP-1345. Income averaging is less appropriate in unemployment or retirement situations, unless there is a finding that the obligor is voluntarily unemployed or underemployed. See Kouris v. Kouris, 8th Dist. No. 81237, 2003-Ohio-1831, ¶¶ 13-16; Justinger v. Schlegel (Jul. 15, 1997), 3d Dist. No. 11-97-3. In other words, income averaging is appropriate when gross income varies due to circumstances and factors beyond the parent's control, no matter what the source may be. It is no more "fair" to penalize a parent and order much higher child support after an uncommonly good financial year, than it would be to penalize the child for a parent's temporary decline in income.
 {¶ 47} The decision to use income averaging under R.C.3119.05(H) is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. The decision to average a parent's income over a period of years is within the sound discretion of the court. R.C. 3119.05(H) [former R.C. 3113.215(B)(5)(h)]. See, also, Johnson v. Huddle, 4th Dist. No. 03CA19, 2004-Ohio-110; McGuire v. McGuire (Mar. 8, 2002), 4th Dist. No. 01CA2789, 2002-Ohio-1061; Ferrero v.Ferrero (Jun. 8, 1999), 5th Dist. No. 98-CA-00095; Luke v.Luke (Feb. 20, 1998), 11th Dist. No. 97-L-044. As noted previously, an abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore, supra. When applying the abuse of discretion standard, appellate courts must not substitute their judgment for that of the trial court. See State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732; In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138.
 {¶ 48} In the present case, father represented that he had essentially earned less income from Fisher Communications as a result of poor economic conditions and the restart of his business in a different location. Nothing in the record demonstrates that he intends to shut down the business or would not continue to try to improve his earnings. Rather, it indicates that, on the basis of his former earnings, father's business had simply had a "bad year." Based upon his past earnings, it is presumed, that if his business continues to decline, he would seek other employment or other business opportunities. Likewise, his investment, rental, and family business income also varies from year to year. Income averaging, in fact, worked to father's advantage regarding his investment income, which steadily rose from 2000 to 2002.
 {¶ 49} The only income that shows a steady decline is father's Mayfair Management salary from his parent's rental property company. Since the record indicates that father may have had some control over how much he worked for his parents, the magistrate appropriately concluded that the amount derived could be increased at his or his parent's discretion. Moreover, even though claimed as self-employment "business expenses," father's rather high expenditures for country club fees, the undertaking of an expensive $917 per month lease for a $45,000 vehicle toward the end of what he claims to have been a poor financial year, his ownership of both a BMW and a Porsche, and investment holdings valued at more than $125,000, provide less than credible support for his argument that he should be entitled to reduce his child support.
 {¶ 50} Consequently, we conclude that income averaging was an appropriate and fair method to assess father's gross income, since it credits father for the recent year of lower income, and yet anticipates that his businesses and other sources of income will recover and thrive in the future. Therefore, we cannot say that the trial court abused its discretion in accepting the magistrate's use of averaging to calculate father's income. Accordingly, appellant's first, second, and third assignments of error are not well-taken.
 III. {¶ 51} We will now address mother's cross-assignments of error. In the first, second, third, and fourth assignments of error, mother essentially argues that the trial court erred in making its factual findings, i.e., the amount of father's reported gross income, the failure to find that father was underemployed, the failure to include nonmonetary benefits in father's income, and the imputing of an additional $10,000 per year to mother's income from 2000 to 2002. As we noted previously, where the transcript is incomplete, the trial court is limited to determining whether the magistrate's factual findings support the conclusions of law. On review of that decision, we must presume the regularity of the trial court regarding the factual findings and may only determine whether the trial court erred in its application of the law.
 {¶ 52} First, in excluding most of father's business deductions, the magistrate was impliedly finding that father was not reporting his income accurately for child support purposes. Since we can find nothing in the record to indicate that father was hiding assets or other income, the trial court did not err in failing to find that father had underreported his income.
 {¶ 53} Next, we have already determined that father's income was appropriately averaged because father's self-employment and other sources of income naturally varied from year to year. Since the court chose to average father's income over a three year period, we cannot say that the court erred in failing to find that he was underemployed.
 {¶ 54} Third, we also must defer to the trial court's decision not to include nonmonetary benefits in father's income. Although father may have benefited from living with his parents and having his own health insurance paid for, there is no requirement that the trial court include these "benefits" in his gross income. Moreover, the incomplete record provides no specific valuation for such an assessment.
 {¶ 55} Finally, mother argues that the trial court should not have imputed an additional $10,000 per year to her income. Mother did, however, acknowledge that she often did not report yearly tip income, estimated for at least one year to be $10,000. Again, based upon an incomplete record, we cannot say that the trial court erred in adding that amount to mother's income.
 {¶ 56} Accordingly, mother's first, second, third, and fourth assignments of error are not well-taken.
 IV. {¶ 57} In her fifth assignment of error, mother asserts that the magistrate erred in not admitting certain summaries of father's income.
 {¶ 58} The admission or exclusion of evidence is generally within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. We again note, without a complete transcript, we must presume the regularity of the trial court's decision to overrule mother's objection regarding the exclusion of certain exhibits. Our reading of the magistrate's findings, however, demonstrates that although the hand-written summaries may have been excluded, the information in them must have been provided through testimony. The magistrate's decision specifically refers to expenses listed on one of the summaries: magazines and gifts purchased for family members, along with other "questionable deductions." Thus, even if these exhibits were improperly excluded, any such error was harmless to mother. In light of these findings, we cannot say that the trial court abused its discretion in overruling mother's objections to the magistrate's exclusion of these summaries.
 {¶ 59} Accordingly, mother's fifth assignment of error is not well-taken.
 {¶ 60} The judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed equally between the parties, pursuant to App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Skow, J., concur.
[1] Although the statutory authority for this case was former C.P.Sup.R. 75, the current definition of "income" is also broad enough to encompass such earnings.