**[Cite as *Kopaniasz v. Kopaniasz*, 2024-Ohio-2493.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ashley Kopaniasz

    Appellee

v.

Michael Kopaniasz

    Appellant

Court of Appeals No.  L-23-1196

Trial Court No.  DR2015-0832

**<u>DECISION AND JUDGMENT</u>**

Decided:  June 28, 2024

* * * * *

Jeremy W. Levy, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** In this expedited appeal, appellant, Michael Kopaniasz, appeals the August 10, 2023 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, modifying his child support order in conjunction with terminating the shared-parenting plan he and appellee, Ashley Kopaniasz, entered into at the time of their divorce.  Because the trial court miscalculated Michael's gross income for 2022, we reverse the trial court's decision in part and remand the case for new child support calculations.

## I. Background and Facts

{¶ 2} Michael and Ashley have two minor children together. When they divorced in 2016, they agreed to a shared-parenting plan that gave them essentially equal parenting time. They also agreed to deviate Ashley's child support obligation to zero. In June 2021, Ashley filed a motion to terminate the shared-parenting plan and modify child support.[1]

{¶ 3} At the September 2022 hearing before the magistrate, Ashley testified that she was employed at Zepf Center as a senior substance use disorder director. She submitted as an exhibit a paystub showing that her year-to-date gross income for 2022 was $75,031.96 as of August 14, 2022. She said that the amount on the paystub was consistent with the year-to-date gross income she listed on the affidavit of income she filed with the court in May 2022.

{¶ 4} In his testimony, Michael said that he was employed at McLaren St. Luke's Hospital on a per diem basis as a registered nurse, working 30 to 40 hours a week. He began that job on June 1, 2022. According to the St. Luke's paystub that Ashley submitted as an exhibit, Michael's year-to-date gross income from St. Luke's for 2022 was $37,154.64 as of July 2, 2022. Before working at St. Luke's, Michael briefly worked as a nurse practitioner for Vituity at a hospital based in Lansing, Michigan. According to the Vituity paystub that Ashley submitted as an exhibit, Michael's year-to-date gross

---

[1] Although the parties filed numerous motions and litigated multiple issues in the trial court, Michael's appeal relates solely to the trial court's determination of his child support obligation, so the other issues are irrelevant here.

2.

income from Vituity for 2022 was $7,792.63 as of April 16, 2022. Although the hourly rates on the Vituity paystub were higher, Michael explained that he was working per diem as a registered nurse at St. Luke's because the "bonus pays" for last-minute or less-desirable shifts are "above and beyond Vituity's pay." In response to his attorney asking if his "income could very well be as much as you were making an Vituity[,]" Michael responded, "It's the same."

{¶ 5} On the whole, Michael's testimony about his employment and sources of income was confusing. At the beginning of his testimony, he said that he changed jobs "about three years ago" to become "full-time at [his] part-time position . . ." to provide medical insurance for the children, which he had done until June 1, 2022. He said the job that provided health insurance was with Vituity, and that the company hired him in November 2021. In June 2022, he "amicably" left his job with Vituity and "went back to [his] previous job of per diem . . ." at St. Luke's. Later, he said that he worked at Vituity for "[t]hree months[,]" but had been providing health insurance for the children "[s]ince 2020." During cross-examination, Michael confirmed the magistrate's understanding that he had worked at St. Luke's full-time, gone to Vituity, and come back to St. Luke's on a per diem basis. Michael's resume and answers to interrogatories, which Ashley submitted as exhibits, confirm that Michael worked at Vituity from March to June 2022, and, contrary to his testimony, indicate that he worked at St. Luke's continuously beginning in January 2019.

3.

**{¶ 6}** In addition to discussing his own employment, Michael testified that Ashley had a private counseling practice on the side. He did not present any information or evidence about her private practice or the income she might have made from it beyond alleging that it existed.

**{¶ 7}** In her decision terminating the parties' shared-parenting plan, the magistrate found that Ashley's gross income as of August 14, 2022, was $75,031.96. The magistrate extrapolated her income to $120,847.94. The magistrate also found that Michael's gross income was $73,903.22. She based that number solely on Michael's paystub from St. Luke's, and did not address the income that he made while working for Vituity in 2022. The magistrate noted that Michael "did not file a witness or exhibit list, nor did [he] provide updated financial schedules as ordered in the pre-trial order . . . ."

**{¶ 8}** Based on those income figures, the magistrate calculated Michael's monthly child support obligation as $375.45 per child, plus processing fees, and his monthly cash medical support obligation as $12.29 per child, plus processing fees. The magistrate ordered that $842 per month be withheld from Michael's income, which included $750.90 for child support, $24.59 for cash medical support, $50 for arrears, and $16.51 for processing fees.

**{¶ 9}** Michael filed objections to the magistrate's decision. In his initial objections, he made a cursory objection to the magistrate's child support calculation. That objection reads, in its entirety, "[Michael] objects to the calculation of child support as the Court failed to adequately find [Ashley's] actual income and overstated

4.

[Michael's] true income."  He did not elaborate on this preliminary objection once he had the hearing transcript, and Ashley did not address the issue in her response to Michael's objections.

{¶ 10} In its decision on Michael's objections, the trial court found that the magistrate erred in calculating Michael's income.  The court noted that it was required to verify the parties' incomes with documents such as paystubs or tax returns, and Michael did not submit any exhibits or update his financial schedules.  The only financial documents available at the time of the hearing were the paystubs that Ashley submitted as exhibits.  In those exhibits was Ashley's year-to-date gross income from Zepf Center, Michael's year-to-date gross income from Vituity, and Michael's year-to-date gross income from St. Luke's.  The court also found that Michael did not offer any evidence that Ashley had income from a source other than her job at Zepf Center.

{¶ 11} The trial court agreed with the magistrate's finding that extrapolating Ashley's year-to-date income resulted in a gross income of $120,847.94.  However, the court disagreed with the magistrate's calculation of Michael's income.  The court found that the magistrate "failed to include all of [Michael's] annual gross income in its computation of child support by not including the three months of income earned as a nurse practitioner with Vituity in 2022."  The court determined that the year-to-date gross pay of $7,792.63 in the Vituity paystub averaged out to $1,948 per week for four weeks, which equaled $25,327 when extrapolated over the 13-week period of March to May 2022.  The court added $25,327 from Vituity to Michael's gross income of $73,903 from

5.

St. Luke's for a gross annual income of $99,230 in 2022. Ultimately, the trial court overruled Michael's objection to the magistrate's calculation of the parties' incomes because he "failed to support his claim regarding his 2022 gross income with documentation required by R.C. 3119.05(A) and failed to produce documentation supporting his objection to the determination of [Ashley's] 2022 gross income."

{¶ 12} Based on its calculation of the parties' gross incomes, the trial court calculated Michael's monthly child support obligation as $578.82 per child, plus processing fees, and his monthly cash medical support obligation as $14.60 per child, plus processing fees. The court found under R.C. 3119.79 that modification of the child support order was appropriate because the new amount was a change of greater than ten percent from the initial child support order of zero dollars and the parties did not contemplate the termination of the shared-parenting plan or the uneven distribution of parenting time when the initial support order was entered. The court ordered that $1,261.59 per month be withheld from Michael's income, which included $1,157.64 for child support, $29.21 for cash medical support, $50 for arrears, and $23.74 for processing fees.

{¶ 13} Michael now appeals, raising one assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT BY MISCALCULATING HIS INCOME BY INCLUDING NONRECURRING, UNSUSTAINABLE INCOME PURPOSES OF CHILD SUPPORT.

6.

## II. Law and Analysis

{¶ 14} In his assignment of error, Michael argues that the trial court abused its discretion by increasing his income because the court failed to appreciate that the money he earned while working for Vituity was nonrecurring and unsustainable income. He contends that the magistrate impliedly determined that his Vituity income was nonrecurring and unsustainable and was properly excluded from his gross income, and the trial court failed to consider the nature of the Vituity income. He also argues that the trial court's statement that "there is no reason for [him] not to be employed on a full time basis" was an implicit finding that Michael was underemployed, which shows that the court "basically punished Michael for not doing something he had no obligation to do; *i.e.*, work full time at a point in time where he was under no duty to pay child support[,]" by imputing the Vituity income to him. (Italics in original.)

{¶ 15} Ashley responds that the trial court's calculation of Michael's income was supported by competent, credible evidence in the record and the court's annualization of Michael's income was reasonable because it was based on the only information the court had available to it. She argues that the trial court's annualization of Michael's income is not equivalent to imputing income to him because he was underemployed. Instead, the court's finding was "an evidentiary necessity created by [Michael's] failure to verify his income as ordered by the trial court." Finally, Ashley points out that Michael did not present any evidence to support his claim of reduced earnings and that his earnings at St. Luke's are within the same range as his earnings at Vituity.

7.

**{¶ 16}** The decision that Michael appeals from is the trial court's decision on objections to the magistrate's decision. A trial court reviews a magistrate's decision de novo. *Brancatto v. Boersma*, 2013-Ohio-3052, ¶ 8 (6th Dist.). In completing this de novo review, "[n]ot only is the [trial] court not bound by the magistrate's decision, the court has an obligation to conduct an independent review as to the objected matters to ascertain whether the magistrate has properly determined the facts and appropriately applied the law." *Id.*, citing Civ.R. 53(D)(4)(d); and *Kovacs v. Kovacs,* 2004-Ohio-2777, ¶ 6 (6th Dist.).

**{¶ 17}** On appeal, however, we review a trial court's ruling on objections to a magistrate's decision for an abuse of discretion. *Id.* at ¶ 9; *Funkhouser v. Funkhouser*, 2019-Ohio-733, ¶ 31 (6th Dist.). Abuse of discretion means that the trial court's decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996). In conducting our review, we will not reverse the trial court's factual determination of a parent's gross income if there is some competent, credible evidence in the record supporting that determination. *Gozdowski v. Gozdowski*, 2017-Ohio-990, ¶ 23 (6th Dist.), citing *Thomas v. Thomas*, 2004-Ohio-1034, ¶ 13 (6th Dist.).

**{¶ 18}** When a court issues or modifies a child support order, it is required to calculate the parents' support obligations using the child support schedule, worksheet, and other provisions in R.C. Ch. 3119. R.C. 3119.02. Under R.C. 3119.01(C)(10), a parent's income is defined as their gross income if they are fully employed. The broad statutory definition of "gross income" encompasses, among other things, "the total of all

8.

earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses . . . ," but specifically excludes "[n]onrecurring or unsustainable income or cash flow items[.]" R.C. 3119.01(C)(13). As relevant here, nonrecurring or unsustainable income is income a parent receives in a year "that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(14).[2] The court calculating child support must verify the parents' income "by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, [and] tax returns . . . ." R.C. 3119.05(A).

{¶ 19} Determining whether income is nonrecurring or unsustainable is a highly fact-specific inquiry. *Wolf-Sabatino v. Sabatino*, 2014-Ohio-1252, ¶ 28 (10th Dist.) Generally speaking, income is nonrecurring or unsustainable if it comes from a one-time payment, like a settlement payment or signing bonus, or reflects a level of income that a parent cannot maintain due to a change in circumstances. *See, e.g., id.* at ¶ 29 (citing cases about one-time payments); *Thomas* at ¶ 19-20 (Overtime income that father made for part of the year was "nonrecurring overtime which is no longer available, . . ." and using that amount to calculate child support "results in a figure that simply does not accurately represent [father's] current income."); *Bruno v. Bruno*, 2005-Ohio-3812, ¶ 14

---

[2] Many definitions in R.C. 3119.01(C) were renumbered effective April 3, 2024. Under the prior version of the statute, income was defined in subsection (C)(9), gross income was defined in subsection (C)(12), and nonrecurring or unsustainable income was defined in subsection (C)(13). The text of these definitions is the same.

9.

(10th Dist.) (Income from father's old job was unsustainable because his new job paid significantly less and it "was clear that [father] would not be earning [his former pay] in the immediate future.").

{¶ 20} In this case, Michael primarily argues that his income from Vituity is unsustainable because he no longer works there, so the trial court erred by including that income in its child support calculation. Although it is true that Michael is no longer employed by or earning money from Vituity, he testified at the hearing that the "bonus pays" for last-minute or less-desirable shifts at St. Luke's are "above and beyond Vituity's pay[,]" and his income from St. Luke's is "the same" as he was making with Vituity. This fact distinguishes Michael's situation from a case in which a parent changes jobs and cannot sustain the level of income they previously earned. *See Thomas* at ¶ 19-20; *Bruno* at ¶ 14. In those cases, including the income from the old job would artificially increase the parent's gross income to an unrealistic and unattainable level. In contrast, excluding the Vituity income would artificially *lower* Michael's gross income for 2022 and ignore his ability to sustain that level of income despite changing jobs. Put another way, including Michael's income from Vituity brings his 2022 gross income to the level that he actually earned in 2022 and that he anticipates earning in the future. Michael was free to present testimony or documentary evidence contemplated by R.C. 3119.05(A) at the hearing that might have shown that his Vituity income was an anomaly, but he did not do so. As a result, he is stuck with the trial court's determination that the Vituity income is part of his gross income for 2022 because that finding is

10.

supported by some competent, credible evidence in the record, and the court's inclusion of that income is not an abuse of discretion.

{¶ 21} Michael argues that the trial court's comment that "there is no reason for [him] not to be employed on a full time basis" shows that the court implicitly found that he was voluntarily underemployed, which it improperly used to impute additional income to him. *See* R.C. 3119.01(C)(10)(b), (18) (definitions applying to voluntarily underemployed parents and their potential income). He correctly points out that the trial court was required to make an explicit finding that he was voluntarily underemployed before imputing income to him. *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 27. But there is no evidence in the record that the trial court implicitly determined that he was underemployed or imputed income to him. In fact, the trial court specifically said that "the Magistrate failed to include all of [Michael's] annual gross income in its computation of child support by not including the three months of income earned as a nurse practitioner with Vituity in 2022." By doing so, the court clearly indicated that it was including the Vituity income because it believed that the magistrate forgot three months of income, not because it thought that Michael was underemployed at St. Luke's and should have been making more money.

{¶ 22} However, although the trial correctly included the Vituity income in Michael's gross income, it incorrectly calculated how much he made. The court based its calculation on the incorrect assumption that Michael earned the year-to-date gross amount on the paystub over a four-week period. But the paystub shows a year-to-date

11.

gross amount through April 16, 2022, which is halfway through the three months Michael worked for Vituity. That is, Michael earned the year-to-date amount on the paystub over six-and-a-half weeks—not four weeks like the trial court found—so the trial court's weekly income amount was based on an incorrect calculation. Instead of dividing the amount in the paystub by four and multiplying the resulting weekly amount by 13 weeks as the trial court did, a more appropriate way to determine Michael's Vituity income is to simply double the year-to-date amount. So, rather than the gross income of $25,327 that the trial court used, the appropriate amount of Michael's gross income from Vituity for 2022 is $15,585.26. When Michael's Vituity income is added to his St. Luke's income, his 2022 gross income for the child support calculation is $89,488.26.

{¶ 23} Because the trial court's findings that Michael's Vituity income was $25,327 and his gross income was $99,230 are not supported by some competent, credible evidence in the record, we find that the trial court abused its discretion by using $99,230 as Michael's gross income in its child support calculation. Accordingly, Michael's assignment of error is well-taken in part.

### III. Conclusion

{¶ 24} Based on the information presented to the magistrate, the trial court did not abuse its discretion by including Michael's Vituity income in his 2022 gross income. However, the trial court's finding that Michael earned $25,327 from Vituity in 2022 is not supported by some competent, credible evidence in the record and is against the manifest weight of the evidence. Because the trial court relied on its erroneous income

12.

calculation, we find that the court abused its discretion in modifying Michael's child support obligation. Therefore, the August 10, 2023 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed as to the amount of child support only and remanded. On remand, the trial court is ordered to recalculate Michael's child support obligation using $89,488.26 as his gross income for 2022. The parties are ordered to divide the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,<br>reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

Christine E. Mayle, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.