[Cite as *A.S. v. J.W.*, 2018-Ohio-1001.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

A.S.                                                    Court of Appeals No. L-17-1099

       Appellee                                     Trial Court No. 15249940

v.

J.W.                                                    **DECISION AND JUDGMENT**

       Appellant                                    Decided:  March 16, 2018

\* \* \* \* \*

Ron L. Rimelspach, for appellee.

Jeffrey P. Nunnari and Rose M. Mock, for appellant.

\* \* \* \* \*

**JENSEN, J.**

## I.  Introduction

**{¶ 1}** Appellant, J.W. ("father"), appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, directing him to pay appellee, A.S. ("mother"), child support in the amount of $4,372.32 per month beginning in January 2016.

## A. Facts and Procedural Background

{¶ 2} On September 2, 2015, mother filed a complaint for allocation of parental rights and responsibilities in relation to the parties' minor child, R.W. In the complaint, mother sought custody of R.W. with parenting time for father, an order directing father to pay for birthing expenses and R.W.'s medical expenses, and an award of child support. Approximately ten months later, the parties entered into a shared parenting plan that addressed the noneconomic issues raised in the complaint. Thereafter, on August 11, 2016, the matter proceeded to an evidentiary hearing before a magistrate on the economic issues, which included various expenses incurred by mother before and during the birth, as well as child support.

{¶ 3} At the hearing, mother and father each testified and introduced a number of exhibits into evidence. Relevant here, the testimony at the hearing revealed the relative income of the parties, with mother earning $122,619.44 in 2013, $132,147.36 in 2014, and $131,506.00 in 2015. Mother expected to earn $140,000 in 2016. Father earned commissions of $85,280.00 in 2013, $246,332.00 in 2014, and $212,898.00 in 2015, along with a base annual salary of $90,000 during that time period. Father testified that he received commission payments totaling approximately $338,000 by the date of the hearing in August 2016, bringing his year-to-date income to $416,509.52. Father stated that he would earn a base salary of $94,000 in 2016, and his commissions for the year were projected to be $368,794.00. Father testified that his commissions for 2016 were the product of several years of work and were not likely to recur.

2.

{¶ 4} At the conclusion of father's testimony, the parties moved for the admission of their exhibits and moved the trial court to be permitted to submit written closing arguments. The magistrate granted the parties' request and took the matter under advisement.

{¶ 5} On September 13, 2016, the magistrate issued her decision in which she adopted the parties' shared parenting plan, denied mother's request for the reallocation of pre-birth expenses and non-birth expenses, and ordered father to pay mother half of the birthing expenses. As to child support, the magistrate ordered father to pay child support in the amount of $2,984.70 per month from September 2, 2015, through the end of 2015. The magistrate then ordered that father pay child support in the amount of $4,372.32 per month beginning in January 2016.

{¶ 6} The increase in child support reflected father's increase in earnings for 2016. According to the child support computation worksheet that was referenced in the magistrate's decision and marked as Joint Exhibit III, the magistrate averaged father's 2014, 2015, and 2016 commissions, and then added the average commission to father's base salary to arrive at father's total gross income of $370,008.00. The magistrate then calculated the parties' combined adjusted gross income, which was $499,807.84. Father's income represented 72.55 percent of the combined gross income. Finally, the magistrate extrapolated father's child support obligation utilizing the one-child amount indicated in the basic child support schedule found in R.C. 3119.021.

{¶ 7} Six days after the magistrate issued her decision, the trial court conducted an independent review of the magistrate's findings and adopted the magistrate's decision.

3.

The trial court's decision was journalized on October 3, 2016. Thereafter, father filed objections to the magistrate's decision, primarily taking issue with the magistrate's child support awards. Father's objections were ultimately found not well-taken and denied by the trial court on March 24, 2017. Father then filed a timely notice of appeal.

## B. Assignment of Error

{¶ 8} On appeal, father assigns the following error for our review:

> The trial court erred and abused its discretion to the prejudice of appellant when it calculated appellant's child support obligation.

## II. Analysis

{¶ 9} A trial court is vested with broad discretion in deciding child support matters and will only be reversed upon a finding that the trial court abused its discretion. *Bigelow v. Bigelow*, 6th Dist. Lucas No. L-13-1018, 2014-Ohio-994, ¶ 18, citing *Dunbar v. Dunbar*, 68 Ohio St.3d 369, 371, 627 N.E.2d 532 (1994). An abuse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "Where a judgment is supported by some competent, credible evidence, there is no abuse of discretion." *Barone v. Barone*, 6th Dist. Lucas No. L-07-1336, 2008-Ohio-5793, ¶ 15, citing *Van Vorce v. Van Vorce*, 3d Dist. Auglaize No. 2-04-11, 2004-Ohio-5646, ¶ 15.

{¶ 10} In his sole assignment of error, father contends that the trial court abused its discretion in calculating his child support obligation. Father advances two arguments to support his assignment of error. First, father argues that the trial court improperly computed his income under R.C. 3119.05(D) by taking into consideration his commission

4.

from 2016. Second, father asserts that the trial court erred in extrapolating his child support obligation from the child support guidelines set out in R.C. 3119.021 where the parties' income exceeded $150,000. We will address father's arguments in turn.

{¶ 11} Concerning father's first argument, gross income is defined in part as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; * * * and all other sources of income." R.C. 3119.01(C)(7). Under R.C. 3119.01(C)(7)(e), "[n]onrecurring or unsustainable income or cash flow items" are excluded from gross income. The determination of gross income is a factual finding that will be upheld if it is supported by some competent, credible evidence. *Thomas v. Thomas*, 6th Dist. Lucas No. L-03-1267, 2004-Ohio-1034, ¶ 13.

{¶ 12} In cases in which the combined gross income of the parents is greater than $6,600 but less than $150,000, courts are directed to calculate the amount of child support by referencing the basic child support schedule contained in R.C. 3119.021. However, where the parents' combined gross income is greater than $150,000 per year, a court "shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3119.04(B).

{¶ 13} In the case at bar, father argues that the trial court improperly included his 2016 commissions in its determination of his gross income under R.C. 3119.05(D), which provides:

5.

(D) When the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses:

(1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;

(2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed.

{¶ 14} Referencing this statute, father insists that the trial court should have added the average of his 2013, 2014, and 2015 commissions onto his base salary from 2016 to arrive at his gross income for purposes of calculating his 2016 child support obligation. Instead, the trial court added the average of father's 2014, 2015, and 2016 commissions onto his base salary in arriving at a child support obligation.

{¶ 15} Notably, R.C. 3119.05(D) concerns the trial court's calculation of overtime and bonuses, not commissions. *See Poling v. Poling*, 10th Dist. Franklin No. 13AP-189, 2013-Ohio-5141, ¶ 13 (Rejecting obligor's argument that the trial court should have treated his commissions as income under R.C. 3119.05(D) and stating that "R.C. 3119.05(D) speaks only to calculation of income from 'overtime and bonuses.' Here, the income earned by appellant from 2009 to 2011 is purely commissions."). That commissions are not subject to R.C. 3119.05(D) is further demonstrated in R.C.

6.

3119.01(C)(7), which limits the amount of bonuses that may be treated as gross income by referencing R.C. 3119.05(D), but does not so limit commissions.[1]

{¶ 16} Having found that R.C. 3119.05(D) does not apply in this case, we note that the trial court had the authority to average father's income for purposes of calculating his gross income under R.C. 3119.05(H). *Lafever v. Lafever*, 12th Dist. Clermont No. CA2014-02-017, 2015-Ohio-823, ¶ 21 ("In order to address situations in which the evidence has established a pattern of income from commissions, but where the amount of those commissions is not predictable from year to year, Ohio courts have consistently turned to R.C. 3119.05(H)."); *see also Hackett v. Hackett*, 5th Dist. Delaware No. 13CAF010002, 2013-Ohio-4684, ¶ 26-29 (averaging obligor's commissions under R.C. 3119.05(H) instead of R.C. 3119.05(D)). R.C. 3119.05(H) provides: "When the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years." We have stated that "[i]t is particularly appropriate * * * to average an obligor's income where the income is unpredictable or inconsistent." *Scott G.F. v. Nancy W.S.*, 6th Dist. Huron No. H-04-015, 2005-Ohio-2750, ¶ 46, citing *Marquard v. Marquard*, 10th Dist. Franklin No. 00AP-1345, 2001 Ohio App. LEXIS 3495 (Aug. 9, 2001).

---

[1] Having examined R.C. 3119.05(D), it appears that the legislature mistakenly included commissions within subsections (1) and (2) of the statute. The statute is clear in its aim to assist trial courts in fairly calculating an obligor's overtime and bonus for purposes of determining gross income, and including commissions in the equation does not appear to advance that aim.

7.

**{¶ 17}** Here, the evidence presented during the hearing reveals that father's income was somewhat inconsistent over the last several years. Thus, we find that income averaging under R.C. 3119.05(H) was appropriate. Under R.C. 3119.05(H), the court was not limited to a three-year lookback period in its averaging, nor was it prohibited from considering father's 2016 income to the extent that the income was established by competent, credible evidence. Such evidence was introduced in the form of father's own testimony and his pay stubs, which established that father had already earned over $400,000 as of the date of the hearing, the majority of which came in the form of commissions.[2] Father acknowledged that he would receive additional commissions and would ultimately earn at least $470,000 in 2016. On this record, we find that the trial court's calculation of father's gross income using his 2016 income was supported by competent, credible evidence. Therefore, we find no merit to father's first argument.

**{¶ 18}** Next, father argues that the trial court erred when it extrapolated his child support obligation from the child support guidelines under R.C. 3119.021.[3] R.C.

---

[2] Father characterizes his commission as an "all-time high" commission. Indeed, father's 2016 commission was his largest over the last several years. Nonetheless, we find that the record does not establish that father's 2016 commissions were nonrecurring or unsustainable so as to be excluded from the trial court's determination of gross income. *See Wolf-Sabatino v. Sabatino,* 10th Dist. Franklin No. 12AP-1042, 2014-Ohio-1252, ¶ 28 (holding that commissions are not nonrecurring when the recipient receives them annually, even where the amount of the commissions vary from year to year).

[3] The extrapolation method "takes the applicable percentage under the child support schedules for couples with combined incomes of $150,000 and applies it directly to whatever income the parents make." *Lanham v. Mierzwiak*, 197 Ohio App.3d 426, 2011-Ohio-6190, 967 N.E.2d 1256, ¶ 18 (6th Dist.).

8.

3119.021 contains a basic child support schedule that "shall be used by all courts and child support enforcement agencies when calculating the amount of child support to be paid pursuant to a child support order, unless the combined gross income of the parents is less than sixty-six hundred dollars or more than one hundred fifty thousand dollars." Because the parties' combined gross income exceeds $150,000, R.C. 3119.04(B) applies in this case. That statute provides:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

{¶ 19} In support of his argument, father cites a 2007 decision from the Eighth District, *Siebart v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, in which the court expressed "significant doubts whether the court fulfills its statutory duty to

9.

determine child support on a case-by-case analysis as required by R.C. 3119.04(B) when it by rote extrapolates a percentage of income to determine child support." *Id.* at ¶ 34. Notably, the court went on in its decision to explain that the extrapolation method is not impermissible per se. Instead, the court determined that the extrapolation method's utility began to diminish as the parties' income rose sharply above $150,000. Consequently, the court held that the application of the extrapolation method to a combined income of $2.6 million yielded an excessive child support obligation.

{¶ 20} Two years prior to *Siebart*, the Eighth District found that "[n]othing in [R.C. 3119.04(B)] prohibits the court from using [the extrapolation] method to determine the amount of support due in high income cases; it merely no longer mandates that the court use this method." *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 56. After the *Siebart* decision was released, the Eighth District returned to the holding of *Cyr*, stating:

> Although a trial court is not required to use the extrapolation method in calculating an award of child support under R.C. 3119.04(B), it is not error for a trial court to use the extrapolation method in determining a parent's child support obligation in high income cases, so long as the trial court otherwise complies with the requirements of R.C. 3119.04(B). *In re J.M.G.*, 8th Dist. Cuyahoga No. 98990, 2013-Ohio-2693, ¶ 31.

{¶ 21} Having reviewed the record below, we find that the trial court did not err simply because it employed the extrapolation method in arriving at its child support figure. This finding is supported by our prior decisions citing to the Eighth District's

10.

decision in *Cyr.* *See Mierzwiak*, *supra*, 197 Ohio App.3d 426, 2011-Ohio-6190, 967 N.E.2d 1256, at ¶ 22; *Bunkers v. Bunkers*, 6th Dist. Wood No. WD-06-030, 2007-Ohio-561, ¶ 23; *Kendall v. Kendall*, 6th Dist. Ottawa No. OT-04-004, 2005-Ohio-1777, ¶ 25. Further, our review of the trial court's decision reveals that the court considered the evidence presented at the evidentiary hearing and fashioned a child support obligation that took the best interests of the parties and the child into account. In so doing, the trial court stated as follows:

> Accounting for the substantial increase in [father's] gross income in 2016, [the magistrate] determined that a modification of the first [pre-2016 child support amount] was fair, equitable, and in the best interest of the parties' minor child.
>
> * * *
>
> After a thorough review of the Magistrate's Decision and Findings of Fact, the transcript, and the fact that two worksheets were prepared, as opposed to one, the Court finds that [the magistrate] appropriately calculated [father's] income. Furthermore, pursuant to R.C. 3119.04(B), the income totals of both parties required a case-by-case analysis, which the Magistrate properly undertook, under the specific circumstances of this case.

{¶ 22} This language demonstrates the trial court's compliance with the mandates of R.C. 3119.04(B). Moreover, because the child support obligation exceeds the obligation that would have been computed under the basic child support schedule for a

11.

combined gross income of $150,000, the trial court was not required to make additional findings to support its child support order. R.C. 3119.04(B).

{¶ 23} In light of the foregoing, we find no merit to father's second argument. Accordingly, father's sole assignment of error is not well-taken.

### III. Conclusion

{¶ 24} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Father is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE