[Cite as *Funkhouser v. Funkhouser*, 2019-Ohio-733.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Mirna Funkhouser | Court of Appeals No. E-18-039 |
| Appellee | Trial Court No. 2009 DR 0084 |
| v. | |
| Mark Funkhouser | **DECISION AND JUDGMENT** |
| Appellant | Decided: March 1, 2019 |

* * * * *

Mirna Funkhouser, pro se.

Mark Funkhouser, pro se.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas, Domestic Relations Division, which modified the terms of child custody and child support obligations between the parties. For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** On May 1, 2009, appellee Mirna A. Funkhouser filed a complaint for divorce against appellant Mark J. Funkhouser on the grounds of gross neglect of duty and incompatibility. The parties were married on July 1, 2000, had three children together, and then separated in 2008. Appellant filed an answer in which he denied the allegations and counterclaimed for gross neglect of duty, extreme cruelty, and incompatibility.

**{¶ 3}** A final divorce hearing was held before a magistrate on June 18, 2013. On September 17, 2013, a "consent" judgment entry decree of divorce was filed which, among other divorce matters, designated appellee the sole residential parent and legal custodian of the children and ordered appellant to pay appellee child support and uncovered healthcare expenses. The "consent" judgment contained only the signatures of appellant, his attorney, the magistrate and the trial court. Attached as Exhibit A to the "consent" judgment entry was the unsigned worksheet used to calculate child support and allocate uncovered healthcare expenses pursuant to R.C. 3119.022. Using appellant's income of $52,863 and appellee's income of $64,887, the worksheet calculated, among other items, monthly child support by appellant to appellee of $531.46 per month, plus a 2-percent processing charge, for $542.09 per month, and allocated uncovered healthcare expenses at the ratio of 45-percent (rounded) to appellant and 55-percent (rounded) to appellee.

**{¶ 4}** On May 2, 2014, the trial court journalized a judgment entry decree of divorce, which terminated the marriage, and determined, among other matters, allocation of parental rights and responsibilities and child support, including arrearage. We

2.

affirmed the trial court's judgment and modified the child support arrearage provision. *Funkhouser v. Funkhouser*, 6th Dist. Erie No. E-14-086, 2015-Ohio-73.

{¶ 5} Thereafter and through August 11, 2017, appellant filed a variety of motions with the trial court with ever-evolving requests to modify the May 2, 2014 child custody and child support judgment, the last of which sought sole custody of the oldest child, N.F., who was then 16 years old.

{¶ 6} Throughout the majority of this divorce proceeding, the parties each retained and dismissed representation by counsel a few times. By the time of the October 27, 2017 magistrate hearing on appellant's motion, each party waived the right to representation by counsel and proceeded pro se. At the hearing, the parties agreed in writing to change the "residential and custodial parent status" of N.F. from appellee to appellant and to the details of visitation and income tax treatment.

{¶ 7} The remaining unresolved and contested divorce matter was modifying child support for all three children, which the magistrate decided on November 14, 2017. Appellant timely filed objections to the magistrate's decision, and as journalized on June 14, 2018, the trial court filed a decision and judgment entry overruling all objections. Using appellant's income of $44,000 and appellee's income of $16,952, the worksheet calculated, among other items, modified monthly child support by appellant to appellee of $496.80 per month, plus "poundage," for $506.74 per month, and allocated uncovered healthcare expenses at the ratio of 72-percent (rounded) to appellant and 28-percent (rounded) to appellee.

3.

**{¶ 8}** Appellant timely appealed pro se and set forth five assignments of error:

I. The trial court erred when it named the defendant as only the residential parent of the parties' minor child, [N.F.].

II. The trial court erred when it did not make the specific finding that the plaintiff is voluntarily unemployed or underemployed.

III. The trial court abused its discretion when it imputed the plaintiff's income for child support purposes at $16,952 per year.

IV. The trial court abused its discretion when it assigned the portion of uninsured medical expense to be paid by each parent.

V. The trial court erred when it overruled the defendant's objection to [the] magistrate's decision in its entirety despite undisputed facts in the record supporting certain objections.

**{¶ 9}** We will address the assignments of error together, as they collectively challenge the trial court's judgment to overrule appellant's objections to the magistrate's decisions on modifications to the original child custody and child support order.

## A. Objections to Magistrate's Decision

**{¶ 10}** Where a party timely files objections to a magistrate's decision, the trial court is required to rule on the objections after "an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). This "independent review" is a de novo review by the trial court. *Brancatto v. Boersma*, 6th Dist. Lucas No. L-12-1271,

2013-Ohio-3052, ¶ 8. We review a trial court's ruling on the objections to a magistrate's decision for an abuse of discretion. *Id.* at ¶ 9. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 11} Appellant argued the trial court erred four times when it overruled his objections to the magistrate's decision: (1) determining appellant was the "residential parent" of N.F. for child custody purposes rather than the "residential and custodial parent"; (2) determining appellee's income as minimum wage for child support purposes rather than finding appellee was voluntarily unemployed or underemployed; (3) determining appellant's occupation as "flight mechanic" for child support purposes rather than "flight paramedic"; and (4) determining for child support purposes the 28-percent and 72-percent allocation of uninsured medical expenses between the appellee and appellant, respectively, rather than a 60-percent allocation to appellee for her voluntarily unemployment or underemployment.

{¶ 12} In response, appellee, also pro se, essentially argued the trial court did not err, and the trial court's judgment should be affirmed.

{¶ 13} The trial court's June 14, 2018 judgment stated:

> The Court having fully reviewed all of the evidence presented; the
> Magistrate's Decision; and the law applicable to this matter as well as the
> Objections, hereby determines that there is no error of law or other defect

evidence on the fact of the Magistrate's Decision. The Defendant's Objections are found to be without merit and OVERRULED. (Emphasis sic.)

{¶ 14} We reviewed the entire record. For the reasons set forth below, we find the trial court did not abuse its discretion when it denied appellant's four objections to the magistrate's decision.

## B. Objection to Child Custody Modification

{¶ 15} Appellant argued the trial court erred when it overruled his first objection to the magistrate's decision. Appellant argued the trial court failed to modify the terms of N.F.'s custody to name appellant N.F.'s "residential and custodial parent" as specified in the parties' October 27, 2017 written agreement. Appellant argued the trial court's decision to only name appellant as the "residential parent" of N.F. "left uncertainty" regarding appellant's custodial status of N.F. because the trial court also stated appellee would only retain custody of the other two children. Appellant cited to R.C. 3109.04(A)(1) for authority that where there was no shared parenting plan, the trial court was required to name both a residential parent and a legal custodian for N.F.

{¶ 16} In response, appellee essentially argued the trial court did not err. Appellee argued "these children have been in a custody battle since 2009 because the Defendant does not want to help support them." Appellee further argued her agreement to change N.F.'s residential custody status did not include his legal custodial status with her because N.F. was "close to turning 18, and [changing custodial status] would be frivolous

6.

* * * [because] the school system * * * only needed residential custody on file." Appellee argued N.F.'s legal custodial status was now moot since he turned 18 years old during the pendency of this appeal.

{¶ 17} We review a trial court's child custody decision for an abuse of discretion, and we will not reverse a particular factual determination in a child custody decision unless it is against the manifest weight of the evidence. *Benlein v. Benlein*, 6th Dist. Sandusky No. S-89-39, 1991 Ohio App. LEXIS 1858, *8-12 (Apr. 26, 1991) (reconciling *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988) and *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990)); R.C. 3109.04(A) and (B) (trial court allocates parental rights and responsibilities in a manner consistent with the best interest of the children). We are guided by the presumption the trial court's findings in a child custody proceeding "were indeed correct." *Miller* at 74.

{¶ 18} The trial court's May 2, 2014 divorce decree originally determined the allocation of parental rights and responsibilities that "it is in the best interests of the minor children that [appellee] is designated the residential parent and legal custodian of the minor children."

{¶ 19} On August 11, 2017, appellant filed a motion for change of parental rights and responsibilities (custody) wherein he sought "to modify the order insofar as necessary to place [N.F.] in the custody of his Father, Mark Funkhouser, the Defendant in this matter." Appellant asserted the change was in the child's best interests.

7.

{¶ 20} On October 27, 2017, the parties' written agreement filed in the record stated, "Father to be named residential and custodial parent of [N.F.]." The record includes the transcript of the October 27, 2017 hearing held before the magistrate, which reveals the only discussion with respect to the written agreement and N.F.'s custody was the following:

The Court: Okay. I have before me a Joint Exhibit A, which is entitled What Changes Need to be Made; it is basically signed by both parties, and there's some initials * * * near the interlineations that were made on the document as far as changes that were made to the document. The document covers basically a proposed agreement between the parties whereas * * * Mark would be designated the residential parent for [N.F.] * * *; is that correct?

Ms. Funkhouser: Correct.

Mr. Funkhouser: Correct.

{¶ 21} On November 14, 2017, the magistrate's decision acknowledged the parties' written agreement. The magistrate stated the parties' written agreement "outlined the fact that the parties agreed that: (1) "The father, Mark Funkhouser be named residential parent of [N.F.] * * *."

{¶ 22} On June 14, 2018, the trial court's judgment stated, "Pursuant to the joint exhibit offered, the Parties agreed that the Father, Mark Funkhouser, be named residential parent of [N.F.] * * *. The only issue the Magistrate heard testimony on was the issue of

8.

child support." It is undisputed in the record N.F. turned 18 years old on November 22, 2018. R.C. 3109.01.

{¶ 23} The allocation of parental rights and responsibilities for the care of minor children of a marriage is governed by R.C. 3109.04. Neither party argued they were subject to a shared parenting decree. R.C. 3109.04(G). Both parties argued there was a meaningful distinction between the terms "residential parent" and "legal custodian" with respect to allocating the parental rights and responsibilities for the care of N.F. We disagree.

{¶ 24} Our review of the record indicates the parties intended for appellant to be the residential parent and legal custodian of N.F. pursuant to their October 27, 2017 written agreement. The magistrate's and the trial court's use of the term "residential parent" for appellant with respect to N.F. without the added words "and legal custodian" did not diminish the effect of the trial court's June 14, 2018 order modifying N.F.'s custody arrangement. The June 14, 2018 order did not include a shared parenting order, and it designated appellant as the "residential parent" of N.F. That order allocated to appellant primary parental rights and responsibilities for N.F.'s "care, custody, and control." R.C. 3109.04(L)(2) (the "residential parent" of the child under the order is also the "residential parent and legal custodian" or the "custodial parent"); *see Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (1999).

{¶ 25} We reviewed the entire record and did not find the trial court's attitude was unreasonable, arbitrary or unconscionable when it modified the custody order allocating

9.

sole parental rights and responsibility to appellant for N.F. by referring to appellant as the "residential parent." We find some competent and credible evidence in the record supporting the trial court's determination it was in the best interest of N.F. to modify his care, custody and control from appellee to appellant, even for the brief period from June to November 2018. We did not find the trial court abused its discretion when it overruled appellant's first objection to the magistrate's decision.

{¶ 26} Appellant's first assignment of error is not well-taken.

## C. Objections to Child Support Modification

{¶ 27} Appellant's second, third and fourth assignments of error challenged the trial court's child support modification order that overruled appellant's objections.

{¶ 28} Appellant argued the trial court erred when it overruled his second objection to the magistrate's decision. Appellant argued the trial court erred by imputing appellee's income as minimum wage, or $16,952, without first finding appellee was voluntarily unemployed or underemployed. Appellant argued the trial court should have imputed her modified child support income as $64,887, the amount used in the original child support worksheet. Appellant argued appellee was voluntarily underemployed because, although she lost a lucrative services contract with a Texas-based company in 2013, his online research showed she was qualified for many computer jobs with a bachelor's degree in aerospace engineering technology and, particularly, the Bureau of Labor Statistics' website showed for the Cleveland-Elyria, Ohio area there were database administrator jobs with a mean annual wage of $70,650.

10.

**{¶ 29}** Appellant urged us to find appellant's self-employment work history, outdated education and database training, and health problems were unreasonable excuses to her voluntary choices to avoid working a "traditional job," citing R.C. 3119.01. Appellant argued, "Plaintiff should not have her annual wages imputed at minimum wage when she testified that she hasn't pursued employment and expressed the attitude that she will not work as an employee, but instead insists on remaining self-employed. This is the essence of voluntary unemployment or underemployment." Appellant also cited to *In re S.E.*, 2d Dist. Montgomery No. 25743, 2013-Ohio-5057, to support his position that there was no evidence on which the trial court could impute minimum wage on appellee where appellant's evidence showed $64,887 was reasonable because it was less than the lowest salary gleaned from his research.

**{¶ 30}** In response, appellee essentially argued the trial court did not err. Appellee argued the trial court should not impute her child support income to be $64,887 because that was never stipulated in 2013. Appellant argued her three separate self-employment jobs running a volunteer program at her youngest child's diabetes camp, a captain boat services event company, and as an Uber driver meant she was not unemployed or underemployed. In particular, when opportunities arose she would "choose wisely" and evaluate database administrator contract/project positions against true net income and the impact on the necessity for a flex schedule to raise and transport three children and meet the demands of the youngest child's medical needs as well as her own deteriorating health, including a stroke. Appellee testified the medical condition of the youngest child

11.

required her to work within one hour of his school "if something were to happen. I have to be local." Meanwhile appellant lived hours away. Appellee argued appellant "does not know anything at all about my income or my qualifications and work history for the last 3 years." Appellee cited to R.C. 3119.01 to support her position she is "not voluntarily underemployed or purposely unemployed." She testified her 10-month gross income for 2017 was $16,078, for 2016 was $10,984, and for 2015 was negative $49,729, based on her income tax records.

{¶ 31} We review a trial court's child support modification order for an abuse of discretion. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997). We will not reverse a trial court's factual determination of gross income for child support purposes if there is some competent and credible evidence in the record supporting that determination. *Gozdowski v. Gozdowski*, 6th Dist. Ottawa No. OT-16-017, 2017-Ohio-990, ¶ 23, citing *Thomas v. Thomas*, 6th Dist. Lucas No. L-03-1267, 2004-Ohio-1034, ¶ 13.

{¶ 32} "Income" for child support purposes includes "gross income" and "potential income" of a parent who is unemployed or underemployed. R.C. 3119.01(C)(5)(b). "Potential income" imputes income to a parent the trial court determines is voluntarily unemployed or voluntarily underemployed from 11 factors, including "any other relevant factor." *Basista v. Basista*, 6th Dist. Wood No. WD-14-076, 2016-Ohio-146, ¶ 19-20, citing R.C. 3119.01(C)(11).

12.

**{¶ 33}** "[T]he question whether a parent is voluntarily (*i.e.*, intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993) (applying former R.C. 3113.215); R.C. 3119.01(C)(5)(b) and (11).

**{¶ 34}** "The trial court, as the trier of fact, is in the best position to weigh the evidence and determine the credibility of witnesses at trial." *Jackson v. Jackson*, 6th Dist. Fulton No. F-12-013, 2014-Ohio-1145, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶ 35}** Appellant's request for the trial court to modify the existing child support order was governed by R.C. 3119.79. *Carver v. Carver*, 6th Dist. Huron No. H-15-006, 2015-Ohio-3941, ¶ 8. Appellant had the burden to demonstrate a modification was justified because of a substantial change in circumstances occurring since the trial court's original child support order. *Id.*

**{¶ 36}** According to R.C. 3119.79(A), when appellant, as child support obligor, requested modification of the original child support order, the trial court was required to "recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation." Thereafter, the trial court may order a modification if two conditions precedent are found: (1) there is a substantial enough change in circumstance where the recalculated amount is 10-percent greater or lesser than

13.

the original child support order pursuant to R.C. 3119.79(A), and (2) the substantial change in circumstance was not contemplated at the time the original child support order was issued pursuant to R.C. 3119.79(C). *Brancatto*, 6th Dist. Lucas No. L-12-1271, 2013-Ohio-3052, at ¶ 11. The court may deviate from the amount calculated pursuant to the basic child support schedule and the applicable worksheet if the court determines that amount "would be unjust or inappropriate and would not be in the best interest of the child" supported by findings specified in R.C. 3119.22. R.C. 3119.79(C).

{¶ 37} The calculation of appellant's modified child support order was also governed by R.C. 3119.02. *Jackson,* 6th Dist. Fulton No. F-12-013, 2014-Ohio-1145, at ¶ 22. R.C. 3119.02 states:

> In any action in which a court child support order is * * * modified, * * * the court * * * shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code. The court * * * shall specify the support obligation as a monthly amount due and shall order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children. In performing its duties under this section, the court * * * is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding.

14.

{¶ 38} Given that we affirmed the trial court's child custody modification determination, the appropriate child support calculation worksheet in this matter, according to R.C. 3119.02 and 3119.79(A) and (C), was the worksheet required by R.C. 3119.023 for split parental rights and responsibilities. *See* R.C. 3119.07(B). The basic child support schedule is stated in R.C. 3119.021. Our review of the June 14, 2018 trial court judgment confirms the trial court complied with R.C. 3119.023 and did not deviate from the calculations contained in the worksheet. The trial court order modifying the amount of child support is rebuttably presumed to be correct when calculated from the basic child support schedule and the calculations in the worksheet. R.C. 3119.03.

{¶ 39} Having determined the basic child support schedule and the correct worksheet was employed by the trial court, we next determine whether appellant met his burden to demonstrate a modification pursuant to R.C. 3119.79 was due to a "substantial enough" change in circumstance. We find he did not.

{¶ 40} The trial court's May 2, 2014 divorce decree ordered appellant, as the child support obligor, to pay child support, including healthcare expenses, to appellee, the child support obligee, a total of $542.09 per month, or $6,505.08 annually. The 10-percent range for a "substantial enough" change of circumstances calculation pursuant to R.C. 3119.79(A) would be below $5,854.58 or greater than $7,155.59. The trial court's June 14, 2018 judgment ordered appellant to pay child support to appellee a total of $506.74 per month, or $6,080.88 annually, which was not within the 10-percent range. *Carver*, 6th Dist. Huron No. H-15-006, 2015-Ohio-3941, at ¶ 9. The June 14, 2018 judgment did

15.

not deviate from the amount of child support resulting from the use of the basic child support schedule and the applicable worksheet. R.C. 3119.22. Consequently, no separate findings of fact were required. *Marker v. Grimm*, 65 Ohio St.3d 139, 139, 601 N.E.2d 496 (1992), paragraph three of the syllabus. We further find that the trial court's reference in its judgment to the mandatory two-percent processing charge as "poundage" was harmless error. R.C. 3119.27.

{¶ 41} Appellant did not demonstrate in the record how, if the trial court used appellee's gross income as $64,887 or, after the trial court determined appellee was voluntarily unemployed or voluntarily underemployed, used appellee's gross income as $16,952, would have resulted in the necessary showing of a "substantial enough" change of circumstances pursuant to R.C. 3119.79(A). Either way, appellant failed to meet his burden to show a substantial change of circumstances.

{¶ 42} Moreover, the trial court was not required to accept as true appellant's evidence and testimony concerning appellee's income potential of at least $64,887. *Lazenby v. Bunkers*, 6th Dist. Wood No. WD-09-046, 2010-Ohio-3075, ¶ 32. Where the financial change in circumstance that would call for application of R.C. 3119.79(A) does not apply, the trial court is not obligated to apply R.C. 3119.79(A). *Id.* at ¶ 33. Rather, we find the trial court's June 14, 2018 judgment modifying appellant's child support amount complied with R.C. 3119.02. We find the trial court order was not required to specifically determine appellee was voluntarily unemployed or voluntarily

16.

underemployed because she testified her 10-month gross income for 2017 was $16,078. R.C. 3119.01(C)(7).

{¶ 43} We reviewed the entire record and did not find the trial court's attitude was unreasonable, arbitrary or unconscionable when it modified the child support order using the applicable child support worksheet for a split allocation of the parental rights and responsibilities of the three minor children. We find the record contained some competent and credible evidence to determine appellee's gross income as $16,952 for child support modification worksheet purposes, which was consistent with her testimony. We find the trial court did not abuse its discretion when it did not make the specific finding that appellee was voluntarily unemployed or voluntarily underemployed. We find the record contained some competent and credible evidence appellant's gross income was $44,000 for child support modification worksheet purposes, which was consistent with appellant's testimony. We did not find the trial court abused its discretion when it overruled appellant's second objection to the magistrate's decision.

{¶ 44} Appellant's second and third assignments of error are not well-taken.

{¶ 45} Appellant argued the trial court erred when it overruled his third objection to the magistrate's decision. Appellant argued the trial court used the wrong gross income for appellee to determine appellee was responsible for 28-percent, rather than 60-percent, of the children's uninsured medical expenses. Appellant argued the trial court erred because the 28-percent and 72-percent allocation between appellee and appellant, respectively, derived from incorrect gross income determinations of $16,952 and

17.

$44,000, respectively, when the allocations should have been 60-percent to 40-percent between appellee and appellant derived from gross income determinations of $64,887 and $43,120, respectively.

{¶ 46} Having found no trial court error with the worksheet calculations pursuant to R.C. 3119.023 using appellant's and appellee's gross incomes for child support modification purposes, we further find the record contained some competent and credible evidence the trial court properly determined the allocation for the children's uninsured medical expenses to be 28-percent to appellee and 72-percent to appellant. We did not find the trial court abused its discretion when it overruled appellant's third objection to the magistrate's decision.

{¶ 47} Appellant's fourth assignment of error is not well-taken.

{¶ 48} Appellant argued the trial court erred when it overruled his fourth objection to the magistrate's decision because of an undisputed fact: appellant's occupation was "flight paramedic" rather than "flight mechanic." Appellant argued "the trial court and the parties to a case should be interested in preserving an accurate record of the proceedings and testimony in future references and inquiries into the case and its facts." Appellant testified he worked as a flight paramedic and earned a gross income of $47,304, but closer to $44,000. The trial court used $44,000 as appellant's gross income in the child support worksheet pursuant to R.C. 3119.023.

{¶ 49} Having found there was some competent and credible evidence in the record to support the trial court's determination that appellant's income was $44,000 for

18.

child support modification worksheet purposes, we find it was not against the manifest weight of the evidence when the trial court's judgment made no mention of appellant's occupation. We did not find the trial court abused its discretion when it overruled appellant's fourth objection to the magistrate's decision.

{¶ 50} Appellant's fifth assignment of error is not well-taken.

{¶ 51} The judgment of the Erie County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                          _____
                                                                JUDGE
Thomas J. Osowik, J.

                                          _____
Christine E. Mayle, P.J.                             JUDGE
CONCUR.

                                          _____
                                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.