[Cite as *Fenicle v. Heinze*, 2024-Ohio-2941.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

Kristina Fenicle

Appellant

v.

Christopher S. Heinze

Appellee

Court of Appeals No.  F-23-007

Trial Court No.  05 DV 254

**DECISION AND JUDGMENT**

Decided:  August 2, 2024

* * * * *

Alex M. Savickas, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** Appellant, Kristina Fenicle ("Mother"), brings this appeal from a final judgment entry of the Fulton County Court of Common Pleas, Domestic Relations Division, which adopted and approved magistrate's decisions that were filed on April 28, 2022, December 22, 2022, and March 10, 2023, respectively. For the reasons that follow, the trial court's judgment is reversed to the extent that Mother was ordered to pay child support from April 2021 to March 2022. In all other respects, the trial court's judgment is affirmed.

## Statement of the Case and the Facts

### Background

{¶ 2} This appeal arises from a divorce action between Mother and appellee Christopher Heinze ("Father"). Mother and Father were divorced in June 2006.

{¶ 3} In a magistrate's decision dated December 17, 2018, Mother was named as residential parent and legal custodian of the parties' minor child -- Braden Heinze, who was born on July 15, 2005 -- and Father was granted a mid-week visitation. In addition, Father was ordered to continue to pay child support.

{¶ 4} On April 7, 2021, a consent judgment entry was filed, which retained Mother as Braden's residential parent and legal custodian. In addition, it granted Father parenting time every other weekend and overnight on Wednesdays during the school year. Finally, it ordered that Father was eligible to claim Braden for income tax deduction, exemption, and credit purposes for even-numbered tax years, and Mother, for odd-numbered tax years.

{¶ 5} On April 14, 2021, Mother filed a motion to show cause, claiming that Father had failed to see that Braden was returned to Mother on schedule, and Father filed a motion to modify parenting time, wherein he alleged that Braden no longer wanted to go home with Mother.

{¶ 6} On May 3, 2021, Father filed a motion seeking an emergency ex parte order on the grounds that the situation between Mother and Braden was "escalating," and that during a recent argument, Mother had "put her hands on" Braden. On May 5, 2021, the

2.

trial court found good cause for the motion and determined that Braden was to remain with Father until further order of the court. The matter was scheduled for hearing on June 4, 2021, but that hearing never occurred.

{¶ 7} In November 2021, Mother hired a new attorney, and in January 2022, the magistrate issued an order memorializing an interim agreement among the parties, which allowed Mother interim parenting time "freely, as Plaintiff and minor child's schedule permit[ted], but not less than every Sunday from 11:00 a.m. until 1:00 p.m." Father continued to pay child support for the child who was physically in his custody, and Mother was the beneficiary of those payments. A hearing before the magistrate was scheduled for March 11, 2022.

{¶ 8} In advance of the March 11, 2022, hearing, the parties reached agreement on certain issues, including: (1) that the parties would enter into a shared parenting plan relating to the parental rights and responsibilities for Braden; (2) that Mother would be the non-emergency medical decision-maker for the child; (3) that no child support would be paid by either party, but Father would remain the obligor under the shared parenting plan with his support obligation reduced to zero dollars per month; and (4) that Mother would withdraw her motion to show cause.

{¶ 9} The parties further agreed that the only issues remaining for the court to decide were: (1) Mother's parenting time; (2) allocation of tax exemption for the minor child or the possible repayment by Mother to Father for child support received; and (3) allocation of school fees for Braden.

3.

## March 11, 2022, Hearing before Magistrate

{¶ 10} At the March 11, 2022, hearing, Father testified that Braden had lived with him since about April 30, 2021, and that Braden was seeing his mother for two hours every Sunday. He further testified that Mother was requesting a "week on, week off" parenting schedule, but that he did not think that schedule would be in Braden's best interest. Instead, Father favored a schedule that would allow Braden visits with Mother "every other weekend" and "maybe some mid time" during the week. Father testified that when he went to pick Braden up from Mother's house on April 30, 2021, Braden was upset and crying and told Father, "She put her hands on me."

{¶ 11} Mother testified that as of January 5, 2022, she and Braden had completed counseling and that it had a significant impact on their relationship. She stated that a "week on, week off" schedule would "only help" them continue to build a stronger relationship, and that "anything less" would have a "severe" negative impact.

{¶ 12} Guardian Ad Litem Mary Beth Moran testified that it would be in Braden's best interest to visit his mother every other weekend, together with a "mid week." She further testified that Mother's proposed "week on, week off" schedule would not be in Braden's best interest.

## Magistrate's Decision filed April 28, 2022

{¶ 13} In the decision filed on April 28, 2022, the magistrate reiterated that the issues for determination included: (1) Mother's parenting time; (2) the "allocation of tax exemption for overpayment of child support by father or another equitable remedy;" and

4.

(3) the allocation of Braden's school fees. The magistrate additionally noted that Father had continued to pay child support although Braden was primarily living with Father during most of 2021 up to April 28, 2022, and that Father had not been able to use the tax exemption.

{¶ 14} After finding a change in circumstances sufficient to justify a modification of the previous allocation of parental rights and responsibility, the magistrate determined that the parties' consented-to shared parenting plan would be effective April 25, 2022. Under the shared parenting plan, Mother would enjoy parenting time on alternating weekends, and Father would enjoy all other times with Braden, with Braden himself able to determine any additional time he might want to spend with his mother.

{¶ 15} Mother was ordered to amend her tax return "to exclude the claiming of Braden on her 2021 taxes." Alternatively, Mother was permitted to pay Father the amount of the 2021 tax credit without amending her return.

{¶ 16} Mother was ordered to be the residential parent for school purposes, and child support was ordered to be terminated.

{¶ 17} Mother filed objections to the magistrate's decision on May 12, 2022, and she supplemented those objections on June 27, 2022. The majority of her objections related to the magistrate's ruling as to Mother's parenting time, but she also objected to the tax dependency allocation and, further, stated that she should not have to reimburse Father for child support, as she was following a previous court order.

5.

## Trial Court's Order filed July 15, 2022

{¶ 18} In an order filed on July 15, 2022, the trial court stated that before it could render a decision on objections to the magistrate's decision, it had to deal with "plain error" that occurred during the proceedings, and which required action by the court.

{¶ 19} Specifically, the trial court pointed out that although the parties agreed that neither was to pay child support to the other, no child support computation worksheet was provided, no explanation as to any deviation in child support was provided, and the record was incomplete with respect to the facts necessary to complete a child support computation worksheet. As a result of these deficiencies, the trial court concluded that it must hold a hearing to determine "whether the agreement to pay no support was in the minor child's best interest or what rationale requires a deviation in the amount of child support to be paid."[1]

## Trial Court's Decision and Order filed August 19, 2022

{¶ 20} The trial court's decision and order filed on August 19, 2022, was likewise based upon Mother's objections to the magistrate's April 28, 2022, decision. Again, however, the trial court declined to make any ruling on those objections due to an incomplete record. The court explained that after completing an initial review of the file, it had scheduled a hearing "to determine all factors necessary to order child support

---

[1] Mother complains in her brief that no hearing was ever had on the issue of child support, but she also adds that "off the record, the judge was referred to the parties' income information which had already been provided to the Magistrate at trial in March 2022." Thus, she argues, the trial court's finding that the record was incomplete with respect to child support deviation factors was incorrect.

6.

pursuant to its Order previously filed in this matter."[2] The court further stated that because no parenting plan had been filed with the court, there was nothing available yet for the magistrate to approve.

{¶ 21} Regarding child support, the court concluded first that "the parties cannot agree to no child support being ordered," and, further, that "Father's obligation to pay child support should have terminated at the time the emergency order was granted or shortly thereafter." The court explained:

> Mother did not have the child in question in her physical possession for several months, yet father continued to pay support. *This is not equitable and runs contra to the requirement that child support be recomputed at the time of the reallocation of parental rights and responsibilities.*
>
> It is the Order of this Court therefore, that the Plaintiff shall be responsible for the sum of $418.84 per month in child support plus a 2% processing fee of $8.32 for a total of $424.16 per month to the Child Support Enforcement Agency for child support of the minor child…. Payments shall commence April 1, 2021.

(Emphasis added.)

{¶ 22} Finally, the trial court directed the magistrate to determine the amount of overpayment of child support to Mother from and after March 31, 2021,[3] stating that Father is to be given credit for that child support overpayment.

---

[2] *See* Footnote 1.
[3] Although the initial order incorrectly stated March 31, 2022, rather than March 31, 2021, this scrivener's error was corrected by way of a nunc pro tunc order issued on November 17, 2022.

7.

{¶ 23} On September 12, 2022, Mother filed a motion to vacate the trial court's August 19, 2022, Decision and Order. The trial court denied the motion the same day.

**Magistrate's Order filed September 29, 2022**

{¶ 24} In an order filed on September 29, 2022, the magistrate ordered Father's support order to Mother retroactively terminated to March 31, 2021, and a full audit to be completed by the Fulton County Child Support Enforcement Agency ("CSEA") from April 1, 2021, to the present.

{¶ 25} On December 12, 2022, Father filed a motion requesting attorney's fees, arguing that CSEA had prepared an audit setting forth the purported overpayment and that if Mother "forces the overpayment issue to a full hearing, she should be required to pay [Father's] reasonable attorney fees and litigation expenses unless she establishes a reasonable basis for challenging the CSEA audit." On December 14, Mother opposed this motion, asserting, among other things, that she should be permitted to "properly vet the calculation of the newly established child support obligation she owes" and to "make a record…should she choose to appeal," essentially arguing that she had never been provided with an opportunity to address the child support issue since that matter was raised sua sponte by the court in its August 19, 2022 Decision and Order.

**Magistrate's Decision filed December 22, 2022**

{¶ 26} The day after a hearing on December 21, 2022 – during which the parties and a representative of CSEA, testified, and an accounting of the child support obligations and payments that were made in this case was received – the magistrate filed

8.

a decision concluding that the amount of Father's overpayment of child support was $4,112.20. This was the precise figure arrived at by the CSEA audit, which was dated September 30, 2022 and attested to by the CSEA representative on October 6, 2022.

**February 9, 2023, Hearing before Magistrate**

{¶ 27} The issues of shared parenting, modification of parental rights and responsibilities, and attorney fees were all subjects of an unrecorded hearing that was held before the magistrate on February 9, 2023.

{¶ 28} Because the February 9, 2023, hearing was not recorded, the court granted Mother and Father leave to file affidavits of evidence as to what they claimed the evidence showed at the hearing. Those affidavits of evidence were ordered to be filed by April 28, 2023, with each party being granted leave until May 30, 2023, to file a responsive affidavit of evidence to address any statements that were contained in the affidavit of evidence that was submitted by the other party.

{¶ 29} On April 28, 2023, Father filed his affidavit of evidence from the February 9, 2023, hearing. Father's filing was an affidavit from Father's counsel, describing events that occurred during the February 9, 2023, hearing.

{¶ 30} On May 1, 2023, Mother filed an affidavit of evidence from the February 9, 2023, hearing that did not appear to be signed by Mother herself. On May 31, 2023, Mother filed a responsive affidavit relating to Father's counsel's affidavit regarding the February 9, 2023, hearing, and this document did appear to have been signed by Mother.

9.

**Magistrate's Decisions filed March 10, 2023**

{¶ 31} On March 10, 2023, the magistrate issued two decisions. One addressed the adoption of the shared parenting plan. In that decision, the magistrate found that a shared parenting was in the minor child's best interest, and that Father's proposed shared parenting plan most accurately reflected both the magistrate's prior ruling and the guardian ad litem's recommendations. The March 10, 2023, magistrate's decision wholly adopted Father's shared parenting plan and incorporated that shared parenting plan into the magistrate's decision that was issued on April 28, 2022.

{¶ 32} The second magistrate's decision that was issued on March 10, 2023, addressed the issue of attorney fees, and concluded as follows:

> After consideration of all relevant factors in R.C. 3105.73(B), Defendant has presented credible evidence that he incurred additional attorney fees as a result of Plaintiff's conduct in failing to accept the results of a simple audit. The Court provided the parties with the result of the audit. The audit was done at the request of the Court.
>
> Parties have every right to litigate colorable claims, here to necessitate a hearing on a Court ordered audit provided by a County agency seems a bridge to [sic] far.

{¶ 33} Mother filed objections to the magistrate's March 10, 2023, decisions.

**Trial Court Decision filed June 20, 2023**

{¶ 34} In a decision filed on June 20, 2023, the trial court identified several matters that remained for the court's consideration, including: (1) Mother's objections to the magistrate's decision filed on April 28, 2022; and (2) Mother's objections to the magistrate's decisions filed on March 10, 2023.

10.

{¶ 35} At the outset of its analysis, the trial court discussed the affidavits of evidence that were submitted by the parties in connection with the February 9, 2023, hearing. Regarding Mother's May 1, 2023, affidavit, the trial court stated:

> While Plaintiff's filing purports to be an affidavit from Plaintiff, herself, it appears that Plaintiff's 'affidavit' was actually signed by a third-party (perhaps Plaintiff's Counsel) given the manner in which Plaintiff's signature states that it was affixed 'per email', with a copy of an email which purports to be from Plaintiff authorizing her to sign the 'affidavit' on her behalf. Because Plaintiff's purported affidavit is not an actual affidavit, the Court will not consider the information provided in Plaintiff's 'affidavit' when ruling upon the pending objections.

Although the trial court declined to consider the May 1, 2023, affidavit, it noted in a footnote that even if it had, nothing contained in the document would have changed or altered the court's factual findings or legal conclusions.

{¶ 36} The trial court subsequently stated that it had reviewed the transcript of the March 11, 2022, hearing, and had reviewed and considered Father's affidavit of evidence relating to the February 9, 2023, hearing, and Mother's May 31, 2023, responsive affidavit of evidence relating to the February 9, 2023, hearing. In addition, the trial court stated that it had considered the relevant exhibits that were entered at both hearings.

{¶ 37} After conducting an independent analysis, the trial court adopted the magistrate's findings of fact with respect to the issues of parenting time and Father's motion for attorney's fees.

{¶ 38} In its conclusions of law, the trial court determined that allowing parenting time as described in Father's proposed shared parenting plan was in the best interest of

11.

the minor child. The court further noted that "[w]hile all of the relevant [R.C. 3109.04(F)] factors have been considered by the Court, the Court believes that it is worth noting that the minor child, who will reach the age of 18 in very short order, informed the Magistrate, during the in camera interview, that, early on, he was more closely bonded with Plaintiff and wanted to live primarily with her, but that as he matured, he wanted to spend more time with his father, and was content with the schedule of spending every other weekend with his mother." In addition, the trial court recognized that "the minor child, of his own choosing, would often spend more time with Plaintiff than only the Court ordered visitation time."

{¶ 39} After finding that Mother's objection to the weight that the magistrate gave the guardian ad litem's report and recommendations was not well-founded, the trial court ordered that: (1) Father's shared parenting plan be designated as the shared parenting plan that would control visitation with the minor child; and (2) Mother was to have parenting time with the minor child on alternating weekends, with her first weekend to commence on June 30, 2023. The trial court added that "[t]he minor child may determine what additional time he may wish to spend with Plaintiff, if any, with Defendant to enjoy all other times with the minor child."

{¶ 40} Regarding the tax dependency allocation, the trial court noted Mother's argument that the matter was not properly before the magistrate because Father admitted that he did not request a modification of child support in his April 14, 2021, motion to modify, and that he likewise did not request a change to the tax dependency allocation. In

12.

response to this argument, the trial court stated that the parties raised the issue of child support, and agreed to a change thereto, when, in March 2022, they agreed that they would not exchange child support.

{¶ 41} Next, the trial court cited R.C. 3119.82 for the proposition that whenever a court issues, modifies, reviews, or otherwise reconsiders a court child support order, the court shall designate which parent may claim the child who is the subject of the court child support order as a dependent for federal income tax purposes. The court then stated, "Put simply, the minor child has been living primarily with Defendant since April 2021 … and the Court finds that it is in the minor child's best interest for the parent who is living with the minor child to have the tax allocation."

{¶ 42} Finally, the court addressed the award of attorney's fees, and found that there was no reasonable debate concerning what the Court had ordered to be calculated, or what those calculations showed. The court further stated that:

> while the Court understands Plaintiff's desire to create a record for future use … the Court does not believe that holding a hearing on the amount of the overpayments that were made during a specified time period, and which were calculated by an audit of the records that were maintained by the governmental agency that was responsible for collecting Defendant's child support payments, furthered that goal. Rather, it appears that the hearing occurred because, with respect to calculating the amount of the overpayment, Plaintiff simply insisted on litigating an issue that should not have been litigated.

{¶ 43} In addition, the court found that the fee charged was reasonable, but was properly limited to $975.80 (for attorney's fees associated with the December 22, 2022

13.

hearing, alone), rather than the $7,068.60 that Father had requested, (for all of the attorney's fees generated by Father's counsel following the issuance of the court's August 19, 2022 decision and order).

### Final Judgment Entry dated July 17, 2023

{¶ 44} In its final judgment entry dated July 17, 2023, the trial court found Mother's objections to the April 28, 2022, magistrate's decision and March 10, 2023, decisions not well-taken, and approved and adopted all three of the contested decisions.

{¶ 45} Incorporating into the final judgment entry its August 19, 2022, decision and order; its March 29, 2023, order and judgment entry; and its June 20, 2023, decision and judgment entry, the trial court ordered: (1) the parties to share parental rights and responsibilities for the custody and care of their minor child as set forth in Father's proposed shared parenting plan; (2) Mother to pay Father as and for current child support the sum of $424.16 per month, beginning on April 1, 2021; (3) Mother to additionally repay to Father the sum of $4,112.20 representing the amount of overpayment of child support paid by Father to Mother during the period April 1, 2021, to April 2022; (4) Mother to pay Father the sum of $975.80 towards his reasonable attorneys' fees and costs; and (5) that Father may claim the minor child as a dependent for income tax exemption, deduction, and credit purposes for the tax year 2021 and each tax year thereafter.

{¶ 46} It is from this judgment entry that Mother currently appeals.

14.

## Assignments of Error

{¶ 47} On appeal, Mother asserts the following assignments of error:

I.    The trial court erred when it unduly delayed in ruling on Mother's objections, causing her prejudice; namely, the inability to have redress for a ruling as to her parenting time.

II.   The trial court erred when it did not rule on Mother's objected matters, but rather, improperly issued a sua sponte order August 19, 2022 retroactively modifying child support. In doing so, the court did not comply with Civ.R. 53 regarding action on objections, and should be vacated as a nullity.

III.  The trial court erred when it sua sponte ordered Mother to pay child support to Father, retroactive April 1, 2021 – nearly a year and a half after the time of the ruling – when Father had never filed for said retroactive modification, and there was never a hearing on same. R.C. 3119.84.

IV.   The trial court erred when it made Mother the child support obligor under a shared parenting plan.

V.    The trial court erred in not accepting the party's stipulations of fact when ruling on Mother's objections.

VI.   The trial court erred in awarding attorney fees to Father, in part because of improperly allowing evidence barred by Evid.R. 408, and in not considering Mother's affidavit of evidence.

VI.   The trial court erred in modifying the tax dependency allocation from Mother to Father without properly considered [sic] the mandatory statutory factors in R.C. 3118.82.

## Law and Analysis

### The delayed ruling on Mother's objections did not result in prejudice.

{¶ 48} Mother argues in her first assignment of error that she was prejudiced by the trial court's delay in ruling on her objections relating to parenting time that were filed in May 2022, and supplemented in June 2022. She states that in June 2022, the parties' child was 17-years-old, with his 18th birthday to occur on July 15, 2023. The trial court did not rule on Mother's objections until June 20, 2023, and the Final Entry was not filed until July 17, 2023. By that time, the minor child had turned 18 and had graduated from high school. Mother claims that the delay by the court in ruling on her objections was entirely to her prejudice, "as the majority of her objections, as supplemented on June 27, 2022 had to do with parenting time for the parties' then-minor child."

{¶ 49} She additionally complains that the trial court proceedings that took place between Father's filing a motion to modify parenting time in April 2021 and the hearing that occurred in March 2022 were "marked with an undue delay that prejudiced Mother."

{¶ 50} In the instant case, the record shows that in April 2021, the relationship between Mother and the minor child was troubled to the point that the minor child no longer wanted to go home with her. Over time, the relationship improved, and in January 2022, Mother agreed to a schedule of interim parenting time as her and her minor child's schedule permitted, "but not less than every Sunday from 11:00 a.m. until 1:00 p.m." As recognized by the trial in its June 20, 2023, decision, "the minor child, of his own choosing, would often spend more time with Plaintiff than only the Court ordered

16.

visitation time." Ultimately, the trial court awarded Mother more hours of scheduled parenting time, but on alternating weekends, in accordance with the shared parenting plan.

{¶ 51} Even if we were to agree that the delay in ruling on Mother's objections was uncommonly lengthy under the circumstances, Mother fails to establish how she has been prejudiced. We note that at no time during the period of delay did Mother move the trial court to rule upon those objections. Her failure to avail herself of such a remedy suggests her acquiescence in the delay, which supports the conclusion that she was not, in fact, prejudiced by it. *See Lowery v. Ridgeway*, 2015-Ohio-5051, ¶ 54 (3d Dist.) (appellant failed to show prejudice from the delay; in addition, her failure to file a writ of procedendo showed her acquiescence to the delay, thereby undermining her claim of prejudice); *Hall v. Hall*, 2013-Ohio-3758, ¶ 34 (2d Dist.) (refusing to reverse the trial court's decision based on a two-year delay between the magistrate's decision and the trial court's judgment adopting the decision, where the appellant failed to point to any prejudice and, further, failed to file a writ asking the appellate court to compel the trial court to rule on appellant's objections); *Toliver v. Duwel*, 2012-Ohio-846, ¶ 96 (2d Dist.) (refusing to reverse the trial court's decision based on a delay, where the appellant failed to point to any prejudice and failed to avail herself of the remedy of a writ of procedendo); *Friess v. Hague*, 1997 WL 460163, *2 (9th Dist. Aug. 6, 1997) (appellant failed to demonstrate how he was prejudiced by delay; also, his failure to move the court to rule on his objection supported the conclusion that he was not prejudiced).

17.

**{¶ 52}** Appellant's first assignment of error is found not well-taken.

### Trial court's order on August 19, 2022, modifying child support prior to, and apart from, a ruling on objections, was not error based on the timing of the order.

**{¶ 53}** Mother complains in her second assignment of error that that the trial court's sua sponte order retroactively modifying child support was unlawful because it went beyond the scope of the issues objected to by Mother, and because it ran counter to the requirements of a former version of Civ.R. 53, which compelled a trial court to rule on objections to a magistrate's decision prior to adopting, rejecting, or modifying that decision. *See, e.g., O'Brien v. O'Brien*, 2003-Ohio-2893, ¶ 27 (citing former Civ.R. 53(E)(4)).

**{¶ 54}** We begin by noting that nothing in the current version of the rule compels a trial court to rule on objections before adopting, rejecting, or modifying that decision. Neither does anything in the current rule prevent a court from modifying an aspect of the magistrate's decision to which no objection has been made.

**{¶ 55}** Instead, current Civ.R. 53(D)(4)(b) allows a court to choose among a wide range of options in response to a magistrate's decision, regardless of whether objections are timely filed:

> Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.

*See* 2006 Staff Notes to Civ.R. 53(D)(4)(b), citing *Johnson v. Brown*, 2003-Ohio-1257, ¶ 12 (2d Dist.) (apparently concluding that former Civ.R. 53(E)(4)(b) permitted the trial

18.

court to modify an aspect of the magistrate's decision to which no objection had been made).

{¶ 56} In addition, Civ.R. 53(D)(4)(e)(ii) provides that:

> *[t]he court may enter an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified.* The timely filing of objections does not stay the execution of an interim order, but an interim order shall not extend more than twenty-eight days from the date of entry, subject to extension by the court in increments of twenty-eight additional days for good cause shown.

(Emphasis added.) Assuming immediate relief was justified in this case -- and there is no evidence or allegation to suggest that it was not -- the trial court was, in fact, permitted under Civ.R. 53(D)(4)(e)(2) to issue an interim order of child support on the basis of the magistrate's decision prior to ruling on Mother's objections.

{¶ 57} What appears to have been error in this case was that the August 19, 2022, order, once entered, was never extended after the first 28 days. But because the child support order was ultimately entered in the trial court's final judgment entry filed on July 17, 2023, following the trial court's June 20, 2023, ruling on Mother's objections, any error in failing to renew the August 19, 2022, order -- a matter that Mother never objected to -- was harmless. Accordingly, Mother's second assignment of error is found not well-taken.

19.

**Trial Court's order of child support was improper to the extent that it ordered Mother to pay child support (as distinguished from ordering her repayment) to Father from April 2021 to March 2022.**

{¶ 58} Mother argues in her third assignment of error that the trial court erred when it sua sponte ordered mother to pay child support to Father, retroactive to April 1, 2021, where Father had never filed a motion seeking modification, and where there was never a hearing on the same.

{¶ 59} The child support order in this case has two parts. The first part is wholly retroactive, involving an order for Mother to repay Father the sum of $4,112.20, "representing the amount of overpayment of child support paid by [Father] to [Mother] during the period April 1, 2021, to April 2022," when Braden went to live with Father and while the emergency order was in effect. Although mother complains that "only the issue of how much child support had [been] overpaid" was heard, and not the underlying obligation, the record is clear that the overpayment of child support by Father was understood by the parties to have occurred. All that was left for the trial court to determine was the amount.

{¶ 60} The second part of the child support order is both retroactive and prospective inasmuch as it provides that for all of the time between April 1, 2021, when Braden went to live with Father, until Braden's 18th or 19th birthday (depending on the circumstances), Mother owed, or would eventually owe, Father child support in the amount of $426.16 per month.

20.

{¶ 61} R.C. 3119.88 (B) provides that a court may terminate a child support order for any appropriate reason brought to the attention of the court, unless otherwise prohibited by law. "Where a child support overpayment is found, the trial court has discretion in ordering repayment." *Wightman v. Darty* 2023-Ohio-3748. ¶ 26 (12th Dist.), (holding that following minor child's adoption by mother's husband, termination of biological father's child support order and the return of his overpaid child support were appropriate), citing *Dietrich v. Dietrich*, 2010-Ohio-3608, ¶ 10 (8th Dist.).

{¶ 62} Where modification of support is at issue, rather than termination, R.C. 3119.79 applies. R.C. 3119.79(A) provides that "[i]f an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet." In addition, R.C. 3119.79(C) provides that,

> [i]f the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid ….

{¶ 63} Under R.C. 3119.84, "[a] court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered."

21.

**{¶ 64}** Discussing the limits of R.C. 3119.84, this court has held:

> The statute's use of the permissive term "may" indicates that a trial court has discretion to modify a child support order only during the time frame between each partys receipt of notice that a motion to modify has been filed and the final order disposing of the motion. Since the time period over which discretion may be exercised is specified by statute, the clear implication is that a trial court has no discretion to retroactively modify a child support order outside of the specified time frame. *Accord*, *Walker v. Walker,* 2003-Ohio-73, ¶ 21-22 (7th Dist.); *Tobens v. Brill*, 89 Ohio App.3d 298, 304 (3d Dist. 1993); *Coffman v. Coffman* (June 28, 1995), 2nd Dist. No. 94-CA-104 (applying prior analogous statute, R.C. 3113.21(M)(4)).

*Montgomery v. Montgomery,* 2007-Ohio-2539, ¶ 15(6th Dist.).

**{¶ 65}** "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997); *Funkhouser v. Funkhouser*, 6th Dist. Erie No. E-18-039, 2019-Ohio-733 [2019 WL 994131], ¶ 31 ("We review a trial cour''s child support modification order for an abuse of discretion.").

**{¶ 66}** Citing R.C. 3119.84, Mother appears to object to both parts of the child support order, arguing in favor of reversal because Father never filed a motion requesting a change in the support order.

**{¶ 67}** Regarding the first part of the order, involving termination of Father's obligation and repayment of his overpayment of child support, R.C. 3119.88 (B) specifically applies. In terminating Father's support obligation and in ordering Mother to

22.

repay Father $4,112.20 in overpaid child support during the period of April 1, 2021, to April 2022 -- when Father was making child support payments to Mother, even though Braden was living with his Father -- the trial court acted within its discretion under this provision.[4]

{¶ 68} Regarding the second part of the child support order -- which requires Mother not just to pay back, but to pay child support to, Father – both R.C. 3119.79(A) and R.C. 3119.84 apply.

{¶ 69} Although Father may not have filed a motion requesting a change in the child support, as pointed out by the trial court the parties themselves raised the issue of future child support -- and, further, agreed to a change thereto -- in March 2022, when they agreed that they would not exchange child support. Because both Mother and Father requested the change, leaving no question about notice, the trial court had the authority to modify the child support order. And because the trial court concluded that simply reducing Father's child support obligation to $0 would be unjust, it properly awarded child support to Father for the period of April 2022 forward.

{¶ 70} But because Mother had no notice of any intention to modify before this time, we find that the court did not act within its discretion in ordering that she pay child support any earlier than that time. Therefore, to the extent that the trial court ordered

---

[4] As indicated above, the amount of this overpayment was clearly established, by way of both a CSEA audit and a hearing before the magistrate on December 21, 2022.

23.

Mother to pay child support during the period of April 1, 2021 to March 2022, such order is reversed.

{¶ 71} Although Mother complains that there was no hearing on the matter of support modification, she admits that "off the record, the judge was referred to the parties' income information which had already been provided to the Magistrate at trial in March 2022." And, on this basis, she concedes that the trial judge's initial finding that the record was incomplete was incorrect. In addition, there is nothing to suggest that Mother ever asked for a hearing on, or disputed the monthly amount of, the child support that she owed. *See Hannah v. Hannah,* 2016-Ohio-1538, ¶ 11 (8th Dist.) (R.C. 3119.64 requires the court to conduct a hearing on a revised amount of child support only where an obligor or obligee files a request for such); R.C. 3119.64. Under the circumstances, where income evidence was contained in the record (rendering the record complete), and where neither party specifically requested a hearing on the amount of child support modification, the absence of such a hearing does not amount to error.

{¶ 72} Mother's third assignment of error is found well-taken, in part, as to the issue of her payment of child support.

### Trial court did not err when it made Mother the child support obligor under the shared parenting plan.

{¶ 73} Mother argues in her fourth assignment of error that it was error for the trial court in its August 19, 2022, order to "sua sponte retroactively modif[y] the child support obligor," making Mother the obligor. In reviewing this assignment of error, we revisit the rationale of the trial court in its August 19, 2022, order rejecting the parties'

24.

plan to have no child support exchanged and, instead, ordering Mother to pay child support, where the court stated:

> Father's obligation to pay child support should have terminated at the time the emergency order was granted or shortly thereafter. Mother did not have the child in question in her physical possession for several months, yet father continued to pay support. This is not equitable and runs contra to the requirement that child support be recomputed at the time of the reallocation of parental rights and responsibilities.

{¶ 74} Mother argues, alternately, (1) that she should not have been made obligor in August 2022, because she was the custodial parent until July 17, 2023, and (2) that she should not have been made obligor at all, because Father earns $4,320 more per year than she does.

{¶ 75} For guidance on this issue, we look to *In re J.C.*, 2022-Ohio-3326, ¶ 84, where the Eighth District Court of Appeals made clear that "'the parent in a shared parenting plan with the greater child support obligation, after being given credit for the time that the child lives with him or her, is the obligor parent * * *.'" *J.C. III*, 2021-Ohio-2451, at ¶ 22 (8th Dist.), quoting *Leis v. Leis*, 1997 WL 335145 (2d Dist. June 20, 1997). In *In re J.C.*, as in the case at hand, the new parenting plan designated that children would be with the father more than the mother. As a result of the change, which marked an increase the father's parenting time, the trial court in *In re J.C.* ordered the mother to pay child support and stated that the mother's obligation was the greater support obligation. The appellate court agreed and held that the mother was correctly designated as the obligor.

25.

**{¶ 76}** Likewise in this case, the new parenting plan gave far more parenting time to Father than to Mother, whereas prior to April 2022, Mother had the majority of the parenting time. Given the new parenting time situation, the trial court ordered Mother to pay child support to Father. As her obligation is clearly the greater support obligation, Mother is correctly designated as the obligor.

**{¶ 77}** Mother's fourth assignment of error is found not well-taken.

### Trial court did not err in rejecting the parties' stipulations regarding child support when ruling on Mother's objections.

**{¶ 78}** Mother argues in her fifth assignment of error that "[b]ecause the parties stipulated that Father's child support obligation would be reduced to $0/month, effective April 25, 2022, that issue was not before the court at any point." She further claims that she never received notice of a request for modification of the child support obligation and, further, that she was denied a hearing.

**{¶ 79}** As indicated above, however, the parties themselves raised the issue of future child support -- and, further, agreed to a change thereto -- in March 2022, when they agreed that they would not exchange child support. Because both Mother and Father requested the change, leaving no question about notice, the trial court had the authority to modify the child support order. And because the trial court considered that simply reducing Father's child support obligation to $0 would be unjust, it properly awarded child support to Father for the period of April 2022 forward. Also indicated above is that Mother never requested a hearing on the amount of child support to be awarded.

26.

{¶ 80} For all of the foregoing reasons, Mother's fifth assignment of error is found not well-taken.

**Trial court did not err in awarding attorney fees to Father.**

{¶ 81} Mother argues in her sixth assignment of error that the trial court erred in awarding attorney fees to Father for litigation involving the amount of child support overpayment. First, she asserts that the magistrate penalized her for requesting a hearing on an issue that the judge "ordered to be heard." But the trial court, in its August 19, 2022, order merely directed the magistrate to determine the amount of overpayment of child support to Mother from and after March 2022. There was no order for a hearing. As indicated above, the CSEA had prepared an audit setting forth the purported overpayment, and the hearing involved Mother's challenge to that audit, which the magistrate considered excessive and unnecessary.

{¶ 82} Mother next claims that the evidence introduced to support Father's claim for attorney fees should have been excluded under Evid.R. 408, because Father introduced emails between the parties' counsel "relating to negotiation of the case." Mother claims that Father's motion for attorney fees "relies heavily – if not exclusively – on what he would characterize as Mother's bad conduct in not agreeing to Father's proposal to resolve the child support issue."

{¶ 83} Evid.R. 408 provides that:

> [e]vidence of furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not

27.

admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

"Evid.R. 408 is applicable only to bar the admission of evidence which is offered to show 'that because a settlement offer was made, the offeror must be liable, because people don't offer to pay for things for which they are not liable.'" *USCA/USA, Inc. v. High Tech Packaging, Inc.*, 2006-Ohio-6195 (6th Dist.). Such is not the case here, where only the amount that was owed, and not the underlying obligation to pay child support, was at issue.

{¶ 84} Finally, Mother complains that the trial court erred in disregarding her improperly signed affidavit of evidence. The court noted in its June 20, 2023, decision that even if it had considered Mother's May 1, 2023 affidavit, the affidavit contained nothing that would change or alter the court's factual findings or legal conclusions. Assuming, without deciding, that it was error for the court to disregard the affidavit, such error was clearly harmless.

{¶ 85} Appellant's sixth assignment of error is found not well-taken.

28.

**Trial court did not err in modifying the tax dependency allocation from Mother to Father.**

{¶ 86} In her seventh assignment of error, Mother challenges the trial court's determination that "given the fact that the issue of child support had been raised by the parties, and a change was purportedly agreed to, the issue of the tax dependency allocation was clearly an issue to be addressed."

{¶ 87} R.C. 3119.82 provides that:

> Whenever a court issues, or whenever a court modifies, reviews, or otherwise reconsiders a court child support order … the court shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes….

Because the trial court modified child support order in this case, it was, indeed, required to designate which parent would receive the tax exemption.

{¶ 88} Mother next argues that even if the court did properly consider a change to the tax dependency allocation between the parties, the court did not engage in an analysis considering the factors set forth in R.C. 3119.82. Under R.C. 3119.82,

> If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its

29.

determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶ 89} Here, the trial court awarded the tax exemption to Father, as the residential parent, stating:

> Put simply, the minor child has been living primarily with Defendant since April 2021…and the Court finds that it is in the minor child's best interest for the parent who is living with the minor child to have the tax allocation.

In reviewing this assignment of error, we note that the record in this case contains no evidence as to net tax savings or the eligibility of either or both parents for the federal earned income tax credit or any other state or federal tax credit. And Mother herself admits that the difference between Mother's and Father's income -- $43,680 and $48,000, respectively -- is less than $5,000. Beyond that, there was no evidence submitted as to the parties' relative financial circumstances or needs of the parents and children. What is clear from the record is that Father was awarded the vast majority of parenting time, and on that basis, together with a determination "that it is in the minor child's best interest for the parent who is living with the minor child to have the tax allocation," the trial court awarded the tax allocation to Father.

{¶ 90} As the trial court made its decision based on the R.C. 3119.82 factors for which there was evidence in the record, we find no error in its modification of the tax dependency allocation from Mother to Father.

30.

**{¶ 91}** Mother's seventh assignment of error is found not well-taken.

### Conclusion

**{¶ 92}** The judgment of the Fulton County Court of Common Pleas is affirmed in-part and reversed in-part, consistent with the attached opinion. The trial Court's order of child support is reversed to the limited extent that it ordered Mother to pay child support to Father from April 2021 to March 2022. In all other respects, the trial court's final judgment entry is affirmed.

**{¶ 93}** Appellant and appellee are to divide the costs of appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.       

_____
JUDGE

Christine E. Mayle, J.      

_____
JUDGE

Myron C. Duhart, J.      
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.